## DANIELS v. BARFIELD et al.
### Civil Action No. 6433.

District Court, E. D. Pennsylvania.
April 8, 1948.

See also 71 F.Supp. 884.

Sundheim, Folz, Kamsler & Goodis, of Philadelphia, Pa. (Morton P. Rome and Allen J. Levin, both of Philadelphia, Pa., of counsel), for plaintiff.

Charles A. Wolfe, Frank W. Hatfield, and Samuel Fessenden all of Philadelphia, Pa., for defendants.

FOLLMER, District Judge.

This action was instituted by the plaintiff for the purpose of requiring defendants to reinstate him in the position he occupied with them before entering the military service and in which following his honorable discharge he had been reemployed and from which he was subsequently discharged within the one year period, and to recover losses of wages and benefits, pursuant to the Selective Training and Service Act of 1940, as amended, 56 Stat. 724, 50 U.S.C.A. Appendix, § 308(e), hereinafter, for convenience, referred to as the Act.

The case was heard in open court and testimony was taken. There was no dispute as to the controlling law nor was there any substantial dispute as to the nature and period of employment both before and

after the time spent in the service nor as to the fact of the discharge. The real factual dispute was over the justification for the discharge.

### Findings of Fact.

1. This Court has jurisdiction of the parties and of the subject matter under Section 8(e) of the Selective Training and Service Act, as amended, Title 50 U.S.C.A. Appendix, § 308, and as extended by the Service Extension Act of 1941, Title 50 U.S.C.A.Appendix, § 357.

2. Plaintiff and defendants are all residents of the City of Philadelphia, and State of Pennsylvania and within the jurisdiction of this Court.

3. Defendants are engaged in the City of Philadelphia, under the trade name of Rietheimer and Barfield, as trucking contractors operating a fleet of trucks.

4. Plaintiff entered the employ of defendants as a truck and trailer driver December 14, 1944, and continued in that capacity until his induction into the armed services of the United States on April 6, 1945.

5. Plaintiff was honorably discharged from the armed services of the United States on October 14, 1945.

6. Plaintiff was reemployed by defendants on or about October 16, 1945.

7. Defendants had for a number of years been employed as contract haulers for Cooper Brewing Company, Philadelphia, Pennsylvania.

8. On one occasion plaintiff was assigned by defendants to drive a load of beer from the Cooper Brewery. Before leaving the brewery, plaintiff was instructed by Nathaniel F. Cooper, President of the brewery, to cover the beer. Plaintiff told Cooper to mind his "own d—— business." Cooper immediately reported the incident to defendants and told them he could not have that type of driver delivering their beer.

9. Again plaintiff was assigned by defendants to drive a load of beer from the Cooper Brewery to a distributor of Cooper at Camp Meade, Maryland. The customary procedure was to deliver the beer at Camp Meade and then to proceed to Annapolis and pick up a load of "empties", or vice versa; the drivers were expected to cooperate with the distributors. On this occasion plaintiff called Mr. Cooper late one evening and told him it was too late and that he would not pick up the "empties." Cooper said "I want you to stay. I will wire you money." Plaintiff replied, "Nuts, I have got $25.00 but I just won't use it." Plaintiff's conduct here was not only disrespectful but definitely insubordinate, and threatened a continuance of the employment of defendants by Cooper.

10. Following the above incidents a hearing was conducted by Union officials, at which defendants were instructed by the Union to reemploy plaintiff.

11. After being directed by the Union to reemploy plaintiff, defendant Barfield told plaintiff that he would put him back to work but that the first time he stepped out of line he "was done."

12. Plaintiff was reinstated February 18, 1946. On February 19, 1946, he was assigned by defendants to report to Cooper's brewery and told that either truck number five or number four would be there, serviced for a trip to Shamokin, Pennsylvania. He was further directed on his return to leave the truck at Barfield's house with a notation of any repairs or servicing needed. He was also told to leave the loading slips with Barfield.

13. Instead of taking the truck assigned to him, plaintiff called at the house of Rolek, another employee of defendants, four blocks distant from the brewery, called him out of bed at about two-thirty A.M., told him he was sent there by Defendant Barfield to take a new G.M.C. truck that had been assigned to Rolek, and asked and received the keys for the truck from Rolek, loaded the G.M.C. truck and made the trip.

14. As the result of this defiance of specific instruction, defendants lost a trip the following day and Rolek lost a day's employment, for the reason that while a smaller truck would have sufficed for trip to which plaintiff was assigned, the large G.M.C. truck was needed for the trip to which Rolek was assigned.

15. Plaintiff was discharged because of the G.M.C. truck incident immediately on his return from the Shamokin, Pennsylvania trip on the evening of February 19, 1946.

16. That on September 19, 1946, plaintiff, by his attorneys, made written demand on defendants for restoration to his former position and recovery of wages, loss of earnings and benefits.

17. That plaintiff instituted this suit September 24, 1946.

### Discussion.

Plaintiff was employed by defendants as a truck and trailer driver from December 14, 1944, until April 6, 1945, when he joined the armed forces of the United States. He was honorably discharged October 14, 1945, reemployed by the defendants on or about October 16, 1945, and continued in their employment until February 19, 1946, when he was discharged, he claims without cause.

Defendants submit three reasons which in their judgment establish that plaintiff is not entitled to recovery, to wit:

(1) Plaintiff's position was temporary.

(2) Plaintiff's delay in seeking reinstatement is tantamount to acquiescence in the discharge.

(3) The discharge was for just cause, consequently there is no right to reinstatement.

In view of our conclusion in relation to the second and third of the above stated reasons, it will be unnecessary to pass on the first.

As above indicated plaintiff was reemployed October 16, 1945, and he was discharged February 19, 1946. There is no evidence that he sought reinstatement in his employment after his discharge until September 19, 1946, when written demand for restoration to his former position and recovery of wages, loss of earnings and benefits was made in his behalf by his attorneys on the defendants. This action was instituted September 24, 1946.

■ "Section 308(e) furnished the means of reinstatement in case of discharge without cause within one year and gave to an employee who was wrongfully discharged the right to claim incidental compensation for loss of wages and benefits sustained by reason of such wrongful discharge. It provided for a speedy hearing of such causes and contained a direction that they be advanced upon the court calendar."[1] Here the plaintiff delayed exactly seven months after his discharge to make a formal demand for reinstatement and incidental benefits. The suit was filed five days thereafter.

The very essence of this provision of the Act is that of promptness. Delay not only deprives the Court of the opportunity of rendering prompt aid to those entitled to it but places the defendant at a disadvantage in being lulled into a false sense of security. I am of the opinion that the delay on the part of the plaintiff was unreasonable and amounts to acquiescence in the action of the defendants and accordingly results in a forfeiture of his right to reinstatement and of the incidental right to demand compensation for loss of wages and benefits.

■ Secondly, the discharge of the plaintiff was not without cause.

Defendants were employed by Cooper Brewing Company to transport beer from its brewery in Philadelphia to various customers. Plaintiff was assigned to drive a truck load of beer from this brewery. When about to leave the brewery with the cargo, plaintiff was told by Nathaniel F. Cooper, President of the brewery company to cover it with a tarpaulin. Plaintiff told Mr. Cooper to "mind his own d—— business," whereupon Cooper reported the incident to defendants with the comment that they could not have that type of driver hauling their beer.

On another occasion, plaintiff was assigned by defendants to drive a truck load of beer from the Cooper Brewery to a consignee at Camp Meade, Maryland, and to pick up a load of "empties." Mr. Cooper testified that one evening he received a phone call from plaintiff at Camp Meade in which plaintiff said to Cooper that it was too late and he would not pick up the empties. Cooper further testified, "I said

[1] Azzerone v. W. B. Coon Co., D. C., 73 F.Supp. 869, 870.

'I want you to stay. I will wire you money.' He said 'Nuts I have got $25.00 but I just won't use it.' He was disrespectful, the type of person we couldn't have around our place."

Prior to the final discharge on February 19, 1946, plaintiff was discharged by defendants on two separate occasions, both of which were followed by hearings before Union officials. On both occasions defendants were directed by the Union to reinstate plaintiff. On the last occasion, on being directed to put plaintiff back to work, defendant Barfield said to the Union official (Testimony of plaintiff p. 40) "* * * then he would put me back to work, but that the first time I stepped out of line I was done." This meeting was held February 18, 1946. On the next day, February 19, 1946, plaintiff reported for work. He was told to report to the Cooper Brewery and that either truck number five or truck number four would be at the brewery, gassed, serviced and ready for the trip. He was to back in, load it and proceed with the cargo to Shamokin, Pennsylvania. He was given further orders that on his return he was not to return to the brewery but to leave the truck at the home of Defendant Barfield, and if any repairs were needed he was to make note of it, and also to leave the loading slips with Barfield. Plaintiff deliberately defied the order given him, and instead of taking the truck assigned to him, took truck number six, a new G.M.C. truck. The result of this action on the part of plaintiff was to cause defendants to lose a trip the following day and also caused a fellow employee to lose a day's work because of the unavailability of a truck the size of the G.M.C. truck.

For this act of insubordination, defendants immediately discharged plaintiff. Plaintiff's testimony in relation to this final occurrence is as follows:

"Mr. Barfield told me I was fired. I said 'Why?' I said 'Didn't the Union tell you I was to be put back on the job?' He told me he was down to the Union. He said 'You deliberately took the wrong truck. You took the G.M.C.' I said 'What's wrong with that?' He said 'You deliberately took the wrong truck. I wanted you to take the Ford.' He told me had been down to the Union and they told him that if I did things like that he didn't have to keep me. I was fired on Mr. Barfield's say-so."[2]

Plaintiff's conduct throughout this employment was bad. He was a trouble maker, he was discourteous to the trade, his conduct resulted in complaints to his employers, the defendants, and direct to the Union officials. He was rankly insubordinate. Under the circumstances the discharge was justified.[3]

### Conclusions of Law.

Conformably to the foregoing it is my conclusion and ruling,

(1) That the delay on the part of plaintiff was unreasonable and amounts to acquiescence in the action of defendants and accordingly results in a forfeiture of his right to reinstatement and of the incidental right to demand compensation for loss of wages and benefits.

(2) That defendants acted with reasonable cause in discharging plaintiff.

(3) That plaintiff is entitled neither to reinstatement to his former position nor to any damages.

(4) Judgment accordingly for defendants.

---

[2] Transcript of Testimony, pages 44, 45.

[3] Pelot v. Schott, D. C., 70 F.Supp. 981.