**WALSH v. CHICAGO BRIDGE & IRON CO.**

No. 48 C 838.

United States District Court
N. D. Illinois, E. D.

Dec. 16, 1949.

324

Stephan, Henehan, McInerney & Gillespie, Chicago, Ill., for the plaintiff.

Walker B. Davis and Hopkins, Sutter, Halls, De Wolfe & Owen, Chicago, Ill., for the defendant.

SULLIVAN, District Judge.

This action is brought under Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(e). The plaintiff alleges in his complaint that he was not restored to his former position in the employ of the defendant after his discharge from the Army in January of 1943. The defendant has denied these allegations in its answer and has served and filed a motion for a summary judgment of dismissal based upon the pleadings and the plaintiff's deposition which has been filed with the Court.

The plaintiff was employed in the defendant's Shipbuilding Division on June 24, 1942. The Shipbuilding Division was a separate division of the defendant organized shortly after Pearl Harbor. It engaged solely in the wartime work of building ships for the United States Navy. It was disbanded in November, 1945 when its work for the Navy was finished.

The plaintiff left the Shipbuilding Division when he was drafted in September, 1942. He served in the Army until he was discharged on January 14, 1943. He reported for work at the offices of defendant's Shipbuilding Division on the following day and was offered clerical work which he refused. He returned to work in the Shipbuilding Division on January 21, 1943 but did so under protest.

Within a month after January 21, 1943, the plaintiff telephoned several times from Chicago to the defendant's personnel manager at Seneca, asking that the defendant give him either the same position or something comparable and acceptable to him. The manager said he could do nothing for the plaintiff.

Between January 21 and about May 1, 1943, the plaintiff also made about three verbal demands on Mr. Marooux who was an assistant treasurer of the defendant and the head of the department in which the plaintiff worked. In these conversations the plaintiff said he was wholly dissatisfied and expected the defendant to take care of him but Mr. Marooux said he had nothing else to offer plaintiff.

The first of plaintiff's conversations with Mr. Grossman, the comptroller of the defendant, relating to his reemployment occurred during the week after plaintiff's discharge from the Army. At that time he told Grossman that he (plaintiff) "wasn't satisfied at all with what they had to offer," and that he "would listen to any kind of a reasonable offer they had to make, * * *."

In April, an offer was made by Grossman to employ plaintiff in the main office of defendant at the salary he was receiving, and in the rating he held, at the time of his induction. Mr. Grossman said the job would be "permanent after the war."

A few days later, plaintiff called on Grossman again and there was a further discussion of the job Grossman had offered. During this conversation, plaintiff learned that he would receive overtime compensation. He asked Grossman again whether the job would be "permanent after the war" and Grossman replied: "Yes. You're one of the main employees here and one of the regular employees here in the main office, and you will be kept on when this thing is

all over." Plaintiff accepted the new job, and accordingly was transferred from the Shipbuilding Division to the main office. This transfer occurred on May 16, 1943.

The plaintiff worked in defendant's main office continuously thereafter until June 28, 1946 when his employment was terminated by the defendant notifying the plaintiff that his services were no longer needed.

■ The facts revealed in the plaintiff's deposition clearly indicate that this is a case where the plaintiff chose to accept a contract of employment in the defendant's permanent business organization in lieu of his alleged right to re-employment in defendant's temporary Shipbuilding Division. He has thereby waived any claim under the Selective Training and Service Act of 1940, and whatever rights he may have had thereunder have been extinguished by satisfaction. This case is governed by Hastings v. Reynolds Metals Co., D.C., 75 F.Supp. 300, affirmed on appeal, Hastings v. Reynolds Metals Co., 7 Cir., 1947, 165 F.2d 484. In dismissing Hastings' action on the merits, the Court stated: "That subsequent to petitioner's release from active military service he freely and voluntarily entered into a contract of employment with respondent, by which contract petitioner agreed to become employed by respondent upon the terms and conditions therein stated, including the condition that the employment could be terminated at any time by respondent, and therefore had he had any rights under the Selective Training and Service Act of 1940 his action in entering into said contract of employment would have waived said rights." [75 F.Supp. 302]. In affirming, the Seventh Circuit Court of Appeals stated: "We concur in the conclusions and the result reached by the District Court, 75 F.Supp. 300 in respect to said contract. Appellant's employment by said written contract in January, 1946, waived his rights if any, to compel re-employment under the Act. The contract and not the statute thereafter determined his rights in respect to appellee." [165 F.2d 487.]

In the case at bar the plaintiff, in addition to accepting a new contract of employment, worked on his new job for more than three years. This period extended more than eight months beyond the termination of the job in the defendant's wartime activity to which plaintiff claims he was entitled. During this entire period, plaintiff made no mention of any alleged rights under the Selective Training and Service Act of 1940. So long a lapse of time induced a reasonable belief on the part of the defendant that the plaintiff accepted fully the accord and satisfaction which had been reached, and it would be inequitable to permit the plaintiff now to attempt to repudiate the election he made on May 16, 1943.

■ The plaintiff admits that he entered into a new contract of employment in lieu of pressing his claim to reinstatement, but denies that this constitutes a waiver of his statutory right. It is not clear what the plaintiff relies upon to preclude a waiver. He refers to the regulations of the War Manpower Commission and states that the defendant refused to release plaintiff for work elsewhere as required by the War Manpower Commission. However, the plaintiff is in error as to the regulations of the War Manpower Commission.

Plaintiff returned to work for defendant on January 21, 1943. After conferences in April, 1943, he accepted a job in the defendant's main office and assumed the duties of his new position on May 16, 1943. In his deposition plaintiff testified that the defendant refused to give him a release despite the fact that in March of 1943 he had an offer to work for two other firms. However, the plaintiff was free to accept an offer of employment elsewhere at any time after his discharge until April 18, 1943. That was the effective date of War Manpower Commission No. 4, promulgated on April 16, 1943. This regulation, which appears in 8 Federal Register at page 5136, constituted the first restriction on transfers of workers in essential industries in Chicago. It required that a person obtain a statement of availability from his employer, or from the United States Employment Service, as a condition precedent to leaving one employer for a position elsewhere at a higher salary. The War Manpower Commission did not even have power to is-

sue such a regulation prior to April 8, 1943, when Executive Order 9328, 50 U.S.C.A. Appendix, § 901 note, granted such authority to it. 8 Federal Register p. 4681.

■ The plaintiff in this action seeks only damages. He has not asked for actual reinstatement to the position he held in the Shipbuilding Division at the time of his induction. The suit is, therefore, legal in nature. Neither the Selective Training and Service Act of 1940 nor any other federal statute fixes the time within which an action based on alleged reemployment rights must be brought. In these circumstances it is the applicable state statute of limitations which prescribes the time within which the rights must be enforced.

This rule was established in Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 219, 39 L.Ed. 280. There the plaintiff, suing for infringement of a patent, sought to escape the state limitations statute on the ground that state statutes "have no application to causes of action created by congressional legislation and enforceable only in the federal courts." The Supreme Court held, however, that Federal courts were required by the Rules of Decision Act, 28 U.S.C.A. § 1652, to follow the applicable state statutes. The court said:

"Unless this be the law, we have the anomaly of a distinct class of actions subject to no limitation whatever,—a class of privileged plaintiffs who, in this particular, are outside the pale of the law, and subject to no limitation of time in which they may institute their actions."

"The truth is that statutes of limitations affect the remedy only, and do not impair the right, and that the settled policy of congress has been to permit rights created by its statutes to be enforced in the manner and subject to the limitations prescribed by the laws of the several states."

■ It is the Illinois statute of limitations which fixes the limitation period applicable to plaintiff's claim because the cause of action arose in Illinois and because this suit was filed in Illinois. The period of limitations prescribed by the Illinois statutes for plaintiff's claim is "five years next after the cause of action accrued." Ch.

83, Sec. 16, Ill.Rev.Stats.1947. The present action was not commenced until June 14, 1948. This was more than "five years next after the cause of action accrued." There is a controversy as to when the cause of action accrued. It is my opinion that the cause of action accrued on January 15, 1943 when plaintiff demanded and was refused the reinstatement to which he thought he was entitled under the Selective Training and Service Act of 1940. As a federal statute is involved, the question of when the cause of action thereunder accrues for purposes of the running of the prescribed limitations period (here the Illinois five-year period) is a matter of federal law. Cope v. Anderson, 331 U.S. 461, 464, 67 S.Ct. 1340, 91 L.Ed. 1602; Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605. The federal rule which has been applied consistently to questions concerning limitations of actions based on federal statutes is that the cause of action accrues from the very first moment that the right to bring court action arises. Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605.

■ In all events, the cause of action accrued not later than May 16, 1943 when the plaintiff quit work in the Shipbuilding Division and accepted a new and independent job in defendant s permanent organization. It will be recalled that during the entire three-year period of plaintiff's employment in this new job he did not make a single mention of any claim against defendant with respect to reemployment.

■ Plaintiff's argument is that his action has not been barred by the Illinois 5-year statute of limitations, first because he says the defendant is estopped to plead the statute, and second because he claims the cause of action did not accrue until June 28, 1946, the date he was released from his employment.

Plaintiff asserts that defendant has been guilty of several acts of misconduct which constitute waiver and estoppel:

1. Refused to reinstate plaintiff to his former position upon his return from military service and attempted to make no adjustment for a period of approximately three and one-half months.

2. Refusal to furnish plaintiff with a release so that he could seek other employment.

3. After three and one-half months entered into an agreement with plaintiff to employ him in the main office on a permanent basis, which agreement the defendant violated.

4. Subsequently discharged the plaintiff on June 28, 1946, thereby violating the agreement and the statute.

The refusal of defendant to reinstate plaintiff—the first ground mentioned—is the cause of action sued upon; as such it obviously could not be a basis of estoppel. There has already been pointed out previously in this memorandum the absence of foundation for the second ground—the alleged failure of defendant to release plaintiff. I might add that even if the War Manpower Commission's restriction on hiring had been in effect throughout the period when plaintiff was unsuccessfully demanding reinstatement, plaintiff could nevertheless have sued to enforce his statutory rights. Defendant's alleged refusal to release him could not have induced plaintiff to refrain from suing—in fact it would have been an additional incentive to do so. The third and fourth grounds—plaintiff's new employment and subsequent discharge —state at best a cause of action over which this court has no jurisdiction.

 The plaintiff's delay in suing precludes his recovery of damages. The power of a court to award damages to a veteran for delay in reinstatement is established by Section 8(e) of the Selective Training and Service Act of 1940. That section provides that a district court of the United States shall have power to specifically require reinstatement "and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." The award of damages is within the discretion of the court. Boston & Maine R. R. v. Bentubo, 1 Cir., 160 F.2d 326.

 In the exercise of this discretion, the courts have uniformly decided that a veteran who delays filing his suit for reinstatement can recover damages only for a period beginning after the date on which the suit is commenced. Kay v. General Cable Corp., D.C., 59 F.Supp. 358; Dacey v. Bethlehem Steel Co., D.C., 66 F.Supp. 161. In the case at bar the delay of over five years is a most unreasonable delay, and it is clear that the plaintiff is not entitled to damages for the period before he filed his suit. This plaintiff does not seek reinstatement. Undoubtedly his failure to do so results from his realization that the job with respect to which he claimed the right to reinstatement terminated in November, 1945. Moreover, the entire Shipbuilding Division was disbanded more than two years before the filing of this suit. Accordingly, there was no job as of the time of the filing of this suit to which plaintiff was entitled to reinstatement. Therefore, the plaintiff is entitled to no damages after the date of his suit because he had, as of that time, no presently subsisting right of reemployment.

I am of the opinion that although plaintiff was not restored to his former position in the employ of the defendant after his discharge from the Army on January 14, 1943, he is precluded, by reason of his own action as well as inaction, from asserting whatever rights he may have had under the Selective Training and Service Act of 1940. He has waived whatever statutory rights he may have had by accepting a new contract of employment in defendant's permanent organization, and holding the same without complaint for more than three years, in lieu of his rights to reemployment in the defendant's war-time Shipbuilding Division. In addition, this suit is barred by the Statute of Limitations. The plaintiff's claim to reinstatement accrued on January 14, 1943, when plaintiff—having been honorably discharged and having applied immediately after discharge—was denied the reinstatement to which he felt entitled; and the applicable five-year statute of limitations began to run from that date.

 Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides primarily that any party seeking to recover upon a claim may, at any time after the pleading in answer thereto has been served,

328

move for summary judgment in his favor upon all or any part thereof. Judgment is to be rendered forthwith if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. But the summary judgment procedure, valuable as it is for striking through sham claims and defenses which stand in the way of a direct approach to the truth of the case, was not intended to deprive a litigant of, or encroach upon, his right to a jury trial. Whitaker v. Coleman, 5 Cir., 115 F.2d 305. At page 306 of 115 F.2d, the court said: "Judges in giving its flexible provisions effect (referring to summary judgment) must do so with this essential limitation constantly in mind. To proceed to summary judgment it is not sufficient then that the judge may not credit testimony proffered on a tendered issue. It must appear that there is no substantial evidence on it, that is, either that the tendered evidence is in its nature too incredible to be accepted by reasonable minds, or that conceding its truth, it is without legal probative force."

I have tested the instant case by the above rule and it plainly appears that there is no genuine issue as to any material fact in controversy proper for trial.

It is my conclusion that the defendant's motion for a summary judgment should be granted.