**Robert L. GRUCA**

v.

**UNITED STATES STEEL CORPO-RATION et al.**

**Civ. A. No. 72–1610.**

United States District Court,
E. D. Pennsylvania.

June 26, 1973.

## MEMORANDUM OPINION

WEINER, District Judge.

Presently before the Court for our decision are cross-motions for summary judgment filed by plaintiff Robert L. Gruca and defendant United States Steel Corporation. Plaintiff has asked us to restore him in his employment to a position of seniority, status, and pay to which he is entitled in accordance with the provisions of the Military Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq.,[1] which, in essence, require a private employer to rehire an honorably discharged veteran who had left a permanent position to enter military service and to restore that veteran "to such position or to a position of like seniority, status, and pay" as he held when he left to enter the service. 50 U.S.C. App. § 459(b)(B)(i). Specifically, Gruca seeks to compel the defendant to grant him a position and seniority adjustment which would put him ahead of those employees who were junior to him prior to his departure for military service but who were promoted in the applicable promotional sequence during his absence. He asks now to be paid lost wages for that 10 year period and to be placed in a seniority position superior to that of four employees who have held senior positions to him during that entire period.

Defendant United States Steel contends, to the contrary that plaintiff is barred from now recovering the relief which he seeks by the doctrine of laches and the Statute of Limitations as a result of the delay of almost 10 years in the filing of the instant suit.

### FACTUAL BACKGROUND

The factual background of this case is not in dispute. Plaintiff Gruca was initially employed by defendant United States Steel Corp. in the Transportation and General Services Department at the

Robert E. J. Curran, U. S. Atty., John T. Thorn, Asst. U. S. Atty., William J. Kilberg, Sol. of Labor, Louis Weiner, Regional Sol., Michael D. Shapiro, Dept. of Labor, Philadelphia, Pa., for plaintiff.

David C. Toomey, Roland Morris, Duane, Morris & Heckscher, Philadelphia, Pa., for U. S. Steel Corp.

A. E. Lawson, Pittsburgh, Pa., for United Steelworkers of America and United Steelworkers of America, Local No. 4889.

1. The statute involved was originally titled the Selective Service Act of 1940. The veteran's reemployment provisions of that Act have remained essentially unchanged, having been incorporated into the Universal Military Training and Service Act of 1948, and again in the Military Selective Service Act of 1967.

Fairless Works on September 7, 1955. He worked continually until May 23, 1957 at which time he was laid off due to lack of work. On September 30, 1958 he was recalled to work as a General Laborer in the Open Hearth Department and thereafter worked continuously in that position until December 8, 1960. On that date, he left the defendant's employ to enter military service. (Gruca Affidavit, ¶¶ 7, 8 [hereinafter cited as G. A.]). Plaintiff served in the armed forces of the United States from December 9, 1960 to December 14, 1962 at which time he was honorably discharged. (G.A. ¶ 10).

Upon his return from military service, plaintiff was rehired by the defendant on January 18, 1963 in the same job classification which he had occupied on December 8, 1960, that of General Laborer, Job Class 2, in the Open Hearth Department. However, plaintiff returned to an employment status better than that which he had left in that he was accorded seniority for the time he was in the service, as if he had been working at United States Steel during this period of time. Workers in the plaintiff's category are temporarily assigned to higher rated and higher paid jobs in various promotional sequences according to their Department Date, which in plaintiff's case is September 30, 1958. Due to the fact that upon his return to work, plaintiff retained his Department Date of September 30, 1958, he held priority for such assignments over other General Laborers who had Department Dates later than his but who, in fact, had actually worked longer in the Open Hearth Department than did plaintiff.

A slight digression will be helpful at this point in order to clarify the general method of promotion which is employed by United States Steel pursuant to the Collective Bargaining Agreements between that Corporation and the defendant United Steelworkers of America.

Persons in the General Laborer category of which Gruca was a member prior to and upon his return from military service, are essentially unskilled laborers. From the position of General Laborer, Job Class 2, an employee has a choice of numerous promotional sequences to follow in moving to more skilled and higher paid positions. The choice of which promotional ladder to follow is an essential career decision because, once in the promotional ladder, there is a very limited opportunity to transfer to another ladder. The choice as to which ladder to follow is based on personal preferences, and in some instances, the speed with which a given employee can move up in any given ladder. The speed of that advancement is often dependent upon the competition for a particular promotional position.[2]

One of the promotional sequences available to employees is "Seniority Unit No. 8—Cranes". An employee wishing to enter that sequence signs up for special training in crane operation when the corporation advertises the need for additional cranemen. Upon satisfactorily passing a test in the operation of the Stockyard Crane, that employee is assigned to a special category called "Crane Extra Board." (G.A. ¶ 11).

While on Crane Extra Board, an employee is still classified as a General Laborer and receives a General Laborer's pay. However, a Crane Extra Board craneman will, from time to time, be called upon to operate a crane when permanent crane operators are temporarily absent. During these times, he makes the higher pay of a Stockyard Crane Operator. (G.A. ¶ 13).

Obtaining Crane Extra Board status is a necessary requirement for a General Laborer who wishes to become a Stockyard Crane Operator. (G.A. ¶ 12). When permanent vacancies in the position of Stockyard Crane Operator become available, employees on Crane Extra Board move up, if they bid for the opening, and where the factor of physical fitness is relatively equal on the basis of

2. See G.A., Exhibit D.

the earliest Crane Extra Board Date. (G.A. ¶ 12).

Returning to the particular facts before us concerning plaintiff Gruca, it appears from the plaintiff's affidavit that, during the time that he was in military service four employees, Shupe, Menhart, Krusek, and Matejik, who had come into the Open Hearth Department after Gruca, signed up for training in Crane Operation and were assigned to the Crane Extra Board. Defendant United States Steel concedes that, had the plaintiff not entered the service, had he continued to be employed, had he been physically fit, and had no one senior to him apply for the Crane Extra Board, and had he himself applied, he would have been entitled to take the training in Crane Operation before these four men by virtue of his earlier Department Date.[3]

Shortly after returning to United States Steel, Gruca signed up for training in Crane Operation, passed his test, and joined the Crane Extra Board on March 28, 1963. That date became his "Crane Extra Board" Date. (G.A. ¶ 16).

On May 1, 1963, United States Steel posted for bid a permanent vacancy for Stockyard Cranemen. Plaintiff applied for this position on May 6, 1963. The position was awarded to Mr. Shupe on May 22, 1963 on the basis of his earlier Crane Extra Board Date. (G.A. ¶ 17). On December 11, 1963 United States Steel posted notice of two other vacancies for Stockyard Cranemen, plaintiff Gruca bid for these positions but the positions were awarded to Krusek and Menhart, again on the basis of their earlier Crane Extra Board Dates.

In February of 1969, two further vacancies were posted, plaintiff bid for the positions, and both he and Mr. Matejik were awarded the promotions. Plain-

tiff's Stockyard Crane Date became March 8, 1969. (G.A. ¶¶ 17, 18, 19).

In light of the particular facts of this case, the complaint of the plaintiff may be stated in specific terms. Gruca contends that when he passed the Crane Operation test on March 28, 1963 he should have been given a retroactive Crane Extra Board Date of January 8, 1962, the day before Shupe's Crane Extra Board date, instead of March 28, 1963 date which he was given. Had this been done, Gruca would have been promoted to Stockyard Craneman in place of Shupe, due to his Department seniority over Shupe, on May 22, 1963 instead of on March 8, 1969. He asks now that he be given Shupe's job and that the intervening employees be bumped back a step on the seniority roster.

One additional factor is of utmost importance to our determination in this case. In February of 1963, Gruca, upon learning that Shupe, Krusek, Menhart, and Matejik held superior positions to him on the Crane Extra Board, spoke with a Union Grievance Committeeman in order to determine whether he could have his full seniority restored. Plaintiff was told, according to his affidavit, that a veteran was entitled only to get his old job back. As a result, he believed that the filing of a complaint with management or the submission of a grievance would be a futile gesture, and no such action was taken. (G.A. ¶ 37). In April of 1969, Gruca did request Union officials to process a grievance on his behalf and was then advised to seek the assistance of the United States Department of Labor. (G.A. ¶ 39.) The instant suit was not filed until August 15, 1972.

## DISCUSSION

Section 9 of the Military Selective Service Act of 1967, 50 U.S.C. App. §

---

3. Brief of Defendant United States Steel Corporation in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, at 5–6. Similarly, there is no dispute as to the plaintiff's good physical health. At all times material to this matter, Gruca's physical fitness to perform as a stockyard craneman was relatively equal to those of the four employees who were promoted ahead of him. In addition, Gruca's ability to perform his duties was, concededly, relatively equal to that of the other four. (G.A. ¶¶ 20, 21.)

459, on which plaintiff's claim is premised, reads in relevant part, as follows:

"(a) Any person inducted into the armed forces under this title . . . for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) . . . shall be entitled to a certificate to that effect upon completion of such period of training and service . . . .

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer who (1) receives such certificate, and (2) make application for re-employment within ninety days after he is relieved from such training and service or from hospitalization, continuing after discharge for a period of one year—

. . . . . .

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay;

. . . . . .

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

. . . . . .

"(c)(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate

in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

Numerous decisions of both the United States Supreme Court and the lower federal courts have focused upon and interpreted the relevant portions of section 9 of the Selective Service Act of 1967 and its precursors.[4] *See, e. g.,* Tilton v. Missouri Pacific R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1963); McKinney v. Missouri-Kansas-Texas R. Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958); Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 (1955) (per curiam), rev'g 211 F.2d 95 (3d Cir. 1954); Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949); Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328 (1947); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946); Bostian v. Seabord Airline R. Co., 211 F.2d 867 (4th Cir. 1954); Addison v. Tennessee Coal, Iron and R. Co., 204 F. 2d 340 (5th Cir. 1953); Muscianese v. United States Steel Corp., 354 F.Supp.

4. The veteran's reemployment provisions of section 9 of the 1967 Act, and specifically § 9(c), are reenactments of § 9(c) of the Selective Service Act of 1948, 62 Stat. 604, 614, as amended, 50 U.S.C. App. § 459, which had reenacted § 8 of the Selective Training and Service Act of 1940.

1394 (E.D.Pa.1973); Foremsky v. United States Steel Corp., 297 F.Supp. 1094 (W.D.Pa.1968). A reading of the case law and a recognition of the "escalator principle" as formulated in *Fishgold, supra,* later embodied in § 9(c)(2) of the present Act, and affirmed most recently in *Tilton, Muscianese,* and *Foremsky, supra,* leave little doubt, in our opinion, that Gruca was wrongfully denied his seniority status upon his return from the military.

Defendant United States Steel does not seriously advance any contentions to the contrary.[5] Its position is that prior to 1965, the Corporation was unaware of any serious challenge to its interpretation and application of the statute[6] [S.A. ¶ 6], that neither the Union nor the U.S. Department of Labor ever seriously challenged this position[7] [S.A. ¶¶ 7, 8], and that not until the decision of Judge Sorg in *Foremsky, supra,* in August of 1968 was it put on actual notice that its policies were in violation of the Act. Accordingly, defendant "began to apply the rationale of *Foremsky* to all returning veterans . . . and has continued to do so to date." [S.A. ¶ 11]. However, for a number of reasons,[8] it concluded that retroactive promotions of those veterans reemployed prior to *Foremsky* who had not promptly and actively pressed their claims would be impossible. [S.A. ¶ 14].

Therefore, the instant case, involving as it does a more than six year delay in the assertion of plaintiff's claim and a nine year delay in the filing of suit, directly raises for our decision the extent of retroactivity which is to be granted a veteran under *Foremsky* and the controlling effect of the equitable doctrine of laches, in light of the extreme factual circumstances of this suit, upon the reemployment provisions of the Military Selective Service Act of 1967.

■■■ Laches consists of two basic elements, inexcusable delay in instituting suit and prejudice resulting to the respondent from such delay. Kane v. Union of Soviet Socialist Republics, 189 F.2d 303, 305 (3d Cir. 1951) (en banc). More than a mere lapse of time is required before the doctrine of laches will be applied; the existence of laches as an equitable defense is to be determined upon the equities of the case and in light of all the existing circumstances. Sobosle v. United States Steel Corp., 359

---

5. See affidavit of George G. Stout, General Attorney in the Law Department of defendant United States Steel Corp. [hereinafter cited as S.A.].

6. Under the applicable collective bargaining agreements, promotions were based on three factors: (1) Ability to perform the work; (2) Physical fitness; and (3) Continuous service. United States Steel believed that where a managerial judgment as to relative ability was one of the contractual determinants of an employee's promotion, a returning veteran did not have a statutory right to any promotion for which he might have been entitled to apply had he been employed at the time that promotion became available. [S.A. ¶¶1, 3]. Thus, it believed that the "escalator principle" was applicable only where promotions were based solely on continuous service or some similar form of automatic progression. [S.A. ¶4].

7. Prior to 1968, only two significant arbitration decisions related to this issue, both of which issued in 1955. The Department of Labor did not begin to urge the Corporation to alter its policies until after *Tilton, supra,* in 1964. [S.A. ¶¶7, 8].

8. It is claimed that non-compliance with *Foremsky* is justified by the following facts: (1) that tens of thousands of employees had left employment with the Corporation to enter military service between 1940 and 1968; (2) that a large number of these persons were reemployed upon their discharge from the service; (3) that a large number of those reemployed would have had claims similar to those of *Foremsky*; (4) that the identification of potential claimants and the establishment of the relevant facts years after the event would have been a virtual impossibility; (5) that multiple promotions may have occurred during the veteran's absence, thus compounding the reconstruction problem; and (6) that innumerable employees would be displaced from their present positions as a result of the retroactive promotion of a previously returned veteran, thus causing extraordinary personnel disruptions. [S.A. ¶¶12, 13].

F.2d 7, 12 (3d Cir. 1966); Loverich v. Warner Co., 118 F.2d 690, 693 (3d Cir.) (citing cases), cert. denied, 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535 (1941).

Insofar as state statutes of limitations are considered in connection with the defense of laches,[9] we are in agreement with Judge Newcomer's recent decision in Muscianese v. United States Steel Corp., *supra*, 354 F.Supp. at 1398–1399, where he stated that the analogous state statute of limitations, here the six year period applicable to actions arising out of contract, 12 Purdon's Pa.Stat.Annot. § 31 (1953), should serve as a guide to a federal court sitting in equity in their determination of a reasonable period of time in which to process a claim involving a similar question at law but are not dispositive of the issue of laches. *See*, Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Carmalt v. General Motors Acceptance Corp., 302 F.2d 589, 590 (3d Cir. 1962); Shell v. Strong, 151 F.2d 909, 911 (10th Cir. 1945). The decision of the Supreme Court in Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956), is instructive:

> "It is well settled, however, that laches as a defense to an admiralty suit is not to be measured by a strict application of statutes of limitations; instead, the rule is that 'the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.' The Key City, 14 Wall. 653, 660 [20 L.Ed. 896]. In cases where suit has been brought after some lapse of time, the question is whether it would be inequitable, because of the delay, to enforce the claim. Holmberg v. Armbrecht, 327 U.S. 392, 396 [66 S.Ct. 582, 90 L.Ed. 743]; Southern Pacific Co. v. Bogert, 250 U.S. 483, 488–489 [39 S.Ct. 533, 63 L.Ed. 1099] 'Where there has been no inexcusable delay in seeking a remedy and where no prejudice

> to the defendant has ensued from the mere passage of time, there should be no bar to relief.' Gardner v. Panama R. Co., 342 U.S. 29, 31 [72 S.Ct. 12, 96 L.Ed. 31]. This does not mean, of course, that the state statute of limitations are immaterial in determining whether laches is a bar, but it does mean that they are not conclusive, and that the determination should not be made without first considering all the circumstances bearing on the issue."

The guidelines upon which we must base our determination of the presence or absence of laches are clear. And while the question of laches is not free from doubt under these same guidelines and the position of the defendant has been persuasively advanced, it is our opinion that, on the totality of facts and circumstances present in the instant case, the defense of laches will not serve as a bar to the action before us.

## A. INEXCUSABLE DELAY

■ The question of delay, as well as the issue of laches itself, is addressed to the sound discretion of the trial court. Burnett v. New York Central R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); Gardner v. Panama R. Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951); Kimberly Corp. v. Hartley Pen Co., 237 F.2d 294 (9th Cir. 1956). In Holmberg v. Armbrecht, *supra*, 327 U.S. at 396, 66 S.Ct. at 584, Mr. Justice Frankfurter, in discussing the role of a court of equity when faced with the question of laches, emphasized:

> "Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.' Galliher v. Cadwell, 145 U.S. 368, 373

---

9. No statute of limitations for the filing of an action pursuant to section 9 of the Military Selective Service Act of 1967 is provided in that federal statute.

[12 S.Ct. 873, 36 L.Ed. 738]; see Southern Pacific Co. v. Bogert, 250 U.S. 483, 488–489 [39 S.Ct. 533, 63 L.Ed. 1099]."

Defendant has called to our attention a number of decisions which it claims should compel a conclusion that Gruca's delay in this instance was inexcusable. However, in light of our equitable powers, and given the evident factual differences between the instant case and those authorities cited to justify dismissal on the grounds of laches, we do not feel ourselves bound to accept these earlier determinations as *ipso facto* controlling. Two of the cases cited by U.S. Steel, Carmalt v. General Motors Acceptance Corp., *supra* (two year delay), and Cummings v. Hubbell, 76 F.Supp. 453 (W.D.Pa.1948) (two year delay), involved veterans who were flatly refused reemployment by their former employers in direct contravention of the terms of the statute. And in Daniels v. Barfield, 77 F.Supp. 283 (E.D.Pa.1948) (seven month delay), and Azzerone v. W. B. Coon Co., 73 F.Supp. 869 (W.D.N.Y. 1947) (seven month delay), delays in

the filing of lawsuits were found to be inexcusable where the veterans were discharged by their employers without good causse within one year of their return from military service, an action also in clear violation of the law.[10] The rights of the veterans in all four cases were crystal clear and the flagrant violations of the very terms of the Act in each instance placed the veterans on immediate notice that their statutory rights had been compromised. Delay in these circumstances, could not be excused by the courts and their conclusion that virtual abandonment of these rights had taken place was certainly justified.[11]

No such abandonment or acquiescence may be inferred from the facts of the instant case. Immediately upon his discovery that he had been denied full seniority, Gruca went to his union representative in order to determine what action he could take to secure his rights as a returning veteran. Again, immediately upon his discovery of the fact that a claim similar to his own had been upheld by a federal court in *Forem-*

---

10. Section 8(e) of the Selective Training and Service Act of 1940, as amended, 56 Stat. 724, 50 U.S.C. App. § 308(e). Similarly, section 9(c)(1) of the 1967 Act, 50 U.S.C. App. § 459(c)(1), provides that a reemployed veteran shall not be dismissed from his position without cause within one year after his reemployment.

11. *See* Leonick v. Jones & Laughlin Steel Corp., 258 F.2d 48 (2d Cir. 1958) (10 year delay in contesting reemployment in a less desirable job found to be laches; held no justification for failure to assert rights); *cf.*, Daniels v. Barfield, *supra* (alternative holding); Marque v. Stern, 88 F.Supp. 306 (M.D.Pa.1950) (alternative holding) (plaintiff not permanent employee prior to military service; employed by different employer for nine months after discharge; barred by laches); Cummings v. Hubbell, *supra* (alternative holding); Polansky v. Elastic Stop Nut Corp., 78 F.Supp. 74 (D.N.J.1948) (alternative holding) (no involvement of employer in thirteen month delay in filing of suit for lost wages; barred by laches; Ippolito v. United States Steel Corp., unreported (C.A. No. 61–130, W.D.Pa.

1961) (temporary employee); Walsh v. Chicago Bridge & Iron Co., 90 F.Supp. 322 (N.D.Ill.1949) (voluntary abandonment of rights). *But see* Wilson v. United States Steel Corp., unreported (C.A. No. 63–594, W.D.Pa.1963) (failure of plaintiff to sustain burden of justifying delay; suit barred by laches after 12 year delay).

In Muscianese v. United States Steel Corp., *supra*, 354 F.Supp. at 1401, the Court stated:

"Each of the above discussed cases [Marque v. Stern, *supra;* Cummings v. Hubbell, *supra;* Polansky v. Elastic Stop Nut Corp., *supra*] was an alternative holding and all except *Polansky* indicated that complainants had effectively abandoned their claims or had acquiesced in their employer's decision not to correct their grievances. This indicates that where laches alone is asserted as the only defense as here, a strong showing of unreasonable delay is required in order to deny Plaintiff his re-employment rights under the Selective Service Act. See Smith v. Missouri Pacific Trans. Co., *supra*. [313 F.2d 676 (8th Cir. 1963)]."

*sky,* Gruca contacted the Department of Labor.

■ Nor are we confronted with a patent violation of the Selective Service Act as was consistently the case in most of the earlier decisions in this area. Although the Supreme Court's decision in Tilton v. Missouri Pacific R. Co., *supra,* did reaffirm and clarify the *Fishgold* decision, *supra,* and its progeny, a veteran's right to retroactive seniority under the circumstances of this case was not explicitly recognized until *Foremsky* was decided. The uncertainty of the governing law throughout this period, although not in itself sufficient to excuse the plaintiff's failure to take legal action, should rightly be considered by the Court in determining laches issue.[12]

We find the opinion of the District Court in Whitmore v. Norfolk & Western Ry. Co., 73 LRRM 2001 (N.D.Ohio 1969) to be most persuasive. To summarize the facts in *Whitmore,* the plaintiff returned from military service in 1953, at which time he was required to complete a training period before he could be promoted to carman. Although this training was completed in 1957, at which time plaintiff was awarded the proper promotion, he claimed that he had been given an inadequate amount of retroactive seniority. In both 1963 and 1957 plaintiff was informed of his seniority status by the company and was told that no further adjustment would be made. In 1958, the company and the Union reaffirmed a policy that gave to a returning veteran back-dated seniority equal only to the actual amount of time which he had spent in military service.

Plaintiff did not contact the Department of Labor concerning his claim until

August of 1964 and suit was not filed until 1966, nine years after his promotion to carman and 13 years after his return from military service.[13]

Speaking directly to the defense of laches, the Court stated:

"In response to his inquiry in 1957, both the company and the union informed Whitmore that there was nothing further he could do about the seniority adjustment which he had received. The solid state of the joint company-union policy, just reviewed, makes it evident that the plaintiff justifiably concluded that it was useless to file written complaints under the grievance procedure to protest his position on the seniority roster.

It is established in the evidence, and it is found, that these declarations of Whitmore's employer, defendant N&W, and his union, third-party defendant Brotherhood, made in response to his inquiries, and upon which he had a right to rely, directly caused the plaintiff to conclude that no remedy was available to him to obtain a further and improved seniority status." Id. at 2007

■ As in *Whitmore,* the defendant here formulated and adhered to a policy which was eventually determined by the courts to be erroneous. Recognizing that defendant United States Steel, by its own actions, made a substantial contribution to the delay at issue, we are hard put to accept its contention that that same delay should foreclose the plaintiff from bringing suit. See Muscianese v. United States Steel Corp., supra, 354 F.Supp. at 1401–1402; Rounds v. Ogden Union R. Co., 70 LRRM 2881 (D.Utah 1968). As the Court stated in Potash Co. of

12. Defendant's contention that the Act itself requires a prompt assertion by a veteran of his rights does not directly apply to the question before us. Section 9(b)(2) of the Act requires a veteran to apply for his former job within 90 days of discharge; section 9(d) requires the federal courts to advance the listing of suits under the Act to assure a prompt hearing of veteran's claims. But the Act is noticeably silent as to the amount of time in which a veteran may bring suit and, as noted earlier, does not include any statute of limitations or reference to such in its provisions.

13. The Court found that no cause of action arose until the 1957 seniority adjustment was made. *Whitmore, supra,* 73 LRRM at 2007.

America v. International Minerals & Chemical Corp., 213 F.2d 153, 155 (10th Cir. 1954):

"If a party which advances the defense of laches is responsible for the delay or contributes substantially to it he cannot take advantage of it."

A court of equity should not, and this Court will not, permit a defendant to assert a laches defense and thereby gain an advantage over a plaintiff in circumstances where that same defendant was in some degree responsible for the lapse of time at issue.

As to the effect of this ruling upon other employees in the defendant's employ, we can venture no opinion. Clearly, each individual veteran's case must be determined on an *ad hoc* basis in light of the particular facts involved.

## B. PREJUDICE

Defendant United States Steel contends that substantial prejudice would result to the Corporation and its employees if plaintiff is permitted to prosecute his claim after so long a period of time and that for this reason, this Court should sustain its defense of laches. We do not agree.

■ Judge Newcomer recently spoke to this very same assertion in *Muscianese* and held that the prejudice would not serve as a bar to the plaintiff's claim:

"The only prejudice to defendant Corporation is that it paid another individual to do the work Plaintiff would have done had Plaintiff been employed in the higher position. Certainly prejudice to the Defendant is an important element to be considered in reaching a final determination on the laches issue. *But the prejudice here was created by the Defendant Corporation's own doing because it assumed the risk of relying on two erroneous arbitration decisions in formulating its policy.* Both the decisions and Defendant's corporate policy relating to this matter flew directly in the face of Section 9(c)(2) of the 1967 Act." Muscianese v. United States Steel

Corp., *supra,* 354 F.Supp. at 1401. [emphasis added]

As to the contention that employees of the defendant would be severely prejudiced by the retroactive granting of seniority after so long a period of time, in that they would be "bumped" down on the seniority ladder, the *Muscianese* court stated:

"First, the Corporation cannot assert the possible prejudice of a third party to sustain its laches defense, see Bostick v. General Motors Corp., 161 F. Supp. 212 (E.D.Mich.1958) but even if it could, these employees have no vested right to a senior position which violates Plaintiff's rights under Section 9 of the Selective Service Act of 1967. See, Whitmore v. Norfolk & Western R. R. Co., 73 LRRM 2001 (N.D.Ohio 1969). Employees generally must expect to be bumped in future cases of seniority adjustment if we are to enforce the law as written." *Id.* at 1402.

Similarly, the court in *Whitmore* ruled that those employees who presently held a preference over the plaintiff in violation of that plaintiff's seniority rights "have no vested right in such illegal preference and hence they have suffered no prejudice or change of position that can be upheld." Whitmore v. Norfolk & Western Ry. Co., *supra,* 73 LRRM at 2008. *See* Witty v. Louisville and Nashville R. R. Co., 342 F.2d 614 (7th Cir. 1965). One further rationale for rejecting the prejudice argument advanced by the defendant should be noted. The doctrine of laches is, in essence, a matter of balancing equities between the parties to a controversy. Thus, a determination as to the presence or absence of "substantial prejudice" must initially begin with a recognition and isolation of the precise interests involved. Defendant seems to suggest that we should balance the interests of the individual plaintiff, Gruca, against the interests of the Corporation and its employees in reaching our decision. But such reasoning is clearly fallacious. Any weighing process which pits the in-

terests of a sole individual against the interests of the group must generally tip in favor of the latter. In our opinion, it is the interests of both the Corporation and of each and every employee in the ordered and proper functioning of the seniority system and the protection of the rights of the individual which must instead serve as the true counterweight in any balancing formula which the courts may employ. Only in this manner may the relevant statutory demands and equitable guarantees which are presently before us in this case be protected to the fullest extent of the law.

## C. DAMAGES

Defendant has requested this Court, in the alternative, to reject the plaintiff's claim for payment of back wages even if we should find that his cause of action is not barred by laches. It is urged that, as this damage suit is an action in law, the Court is obliged to apply the applicable six-year Pennsylvania statute of limitations, 12 Pa.P.S. § 31, and, thereby, to deny any monetary relief. To the contrary, plaintiff argues that the instant claim for damages arises directly out of and is an integral part of his claim for relief under the Military Selective Service Act of 1967. As such, it is contended that the right of the plaintiff to recover back wages which were unjustifiably withheld by his employer is a federally-created right, equitable in nature, and thereby not governed by state statutes of limitations.

It should first be noted that, even if we were to hold that Gruca's claim for damages is an action at law and that, as a result, the statute of limitations was binding upon us, the effect of such a ruling would not be a total and complete foreclosure of plaintiff's right to damages. Basic hornbook law establishes that where a debt or obligation is payable in installments, the statute of limitations begins to run as to each installment from the time it falls due. Tye v. Hertz Drivurself Stations, 80 F.Supp. 536 (E.D.Pa.1948), appeal dismissed, 173 F.2d 317 (3d Cir. 1949); Barrett v. National Malleable & Steel Castings Co., 68 F.Supp. 410 (W.D.Pa. 1946); see Western Oil Fields, Inc. v. Pennzoil United, Inc., 421 F.2d 387, 390 (5th Cir. 1970); Hermann v. United States, 81 F.Supp. 830, 113 Ct.Cl. 54 (1949). Application of the statute of limitations in this instance would serve only to foreclose recovery of wages due and payable prior to the six-year statutory period. Hence, plaintiff would be entitled to an award of damages for unpaid back wages for the period beginning on April 15, 1966, six years prior to the filing of suit.[14]

■ However, our understanding of the matter before us and a careful reading of those few cases in which similar questions have been adjudicated leads us to conclude that our equitable jurisdiction under the Military Selective Service Act extends to the plaintiff's concomitant claim for back wages and that we are not bound by the state statute of limitations in determining the extent of monetary recovery to be allowed.

Defendant places principal reliance on two recent Fifth Circuit opinions, Bell v. Aerodex, Inc., 473 F.2d 869 (5th Cir. 1973), and Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5th

14. Following the dictum of the Court in Muscianese v. United States Steel Corp., supra, 354 F.Supp. at 1400 n. 1, it could be argued that in a case containing mixed elements of law and equity "the statute should be regarded as tolled at the point when the government enters into negotiations with the employer to enforce the employee's rights." Id. Plaintiff, under this reasoning, would be entitled to recover back wages for the period beginning April 18, 1963. But as our holding on the question of damages does not rest on a finding that the statute of limitations is here applicable, we find no reason to discuss or determine this much-debated issue. See Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815, 819 (5th Cir. 1972), rev'g, 336 F.Supp. 1011 (M.D.Ala.1971) (delay which results from governmental bureaucratic procedure does not toll state of limitations) and see dissenting opinion of Judge Tuttle, id. at 820–821.

Cir. 1972) rev'g, 336 F.Supp. 1011 (M.D. Ala.1971), where the Court of Appeals, in passing on claims for back wages only under the 1967 Act, held that such claims were actions at law and that the court was bound to apply the applicable statutes of limitations of Florida and Alabama. These findings, in turn, completely barred the recovery of monetary relief.

But reliance on *Blair* and *Bell* is misplaced. In both cases, the court was careful to note that the claims in question, being only for back wages, should be denominated as "wage cases" and suggested that a different result might follow if the wage claims were coupled with claims for the restoration of a veteran's rights.

"From the pleadings and briefs filed herein it is clear that the only relief requested, and the only alleged benefit not completely restored by Aerodex was back wages. As counsel for the claimants, the Government acknowledges the limited relief sought, but argues that the nature of these claims is permeated with the remedial character of the whole act because a veteran 'sues not simply as an employee under a collective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces.' McKinney v. Missouri-K.-T.R.R., 1958, 357 U.S. 265, 268–269 [78 S.Ct. 1222, 2 L.Ed.2d 1305]. The Government concludes by asserting that, since it is the unusual suit in which a veteran, is seeking only wages, determining the 'essential nature' of the claim by looking solely to what is in fact being claimed will lead to inconsistencies in the application of statutes of limitations to veterans reemployment cases.

"We recognize that calling this a 'wage case' might lead to a result different from that which would be reached if we termed the case a 'suit for the restoration of veterans rights,'

but such a difference is nowhere proscribed by federal law. In fact, it is just such differences in the remedy sought that dictate whether the case will be considered an action at law or a proceeding in equity. [citations omitted]. Consequently, cognizant of the fact that the remedial nature of the Act requires that it be liberally construed (see Fishgold v. Sullivan Dry Dock & Repair Corp., 1946, 328 U.S. 275, 284–285 [66 S.Ct. 1105, 90 L.Ed. 1230]), we conclude that because only back wages are sought, the essential nature of each *claim* is one for wages." Bell v. Aerodex, Inc., *supra,* 473 F.2d at 871–872, 82 LRRM at 2595–96 (emphasis added).

Similarly, the *Blair* court, in reversing a lower court holding which labelled the wage claim as an action in equity, was careful to discuss the basis for their holding:

"The [district] court was obviously basing its holding that equitable relief was involved on the appellees' original bill of complaint which sought, in addition to recovery of lost wages, job security, seniority, and other benefits. Apparently the district court did not have its attention directed to the written stipulation in which appellees stated that they sought 'only to recover for alleged loss of pay'. Since the only relief requested was the recovery of money, equitable relief will not lie, 27 Am.Jr.2d Equity § 112." Blair v. Page Aircraft Maintenance, Inc., *supra,* 467 F.2d at 818–819.

Defendant also argues that the application of the Pennsylvania six-year statute of limitations in Falsetti v. United Mine Workers, 249 F.Supp. 970 (W.D.Pa. 1965), aff'd, 355 F.2d 658 (3d Cir. 1966); *see* 34 F.R.D. 461 (W.D.Pa.1964), a claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as amended, is controlling in this Circuit. But the only discussion in *Falsetti* of the statute of limitations as it effects concurrent equitable and legal claims is in dictum, *id.* at 249 F.2d at 972, and the only claims which were

present in the case were claims for damages which arose out of and were premised upon federally created rights.

Earlier in this opinion we noted our agreement with basic rule of equity that a court of equity is not bound to apply a statute of limitations but may determine the proper application of the statute in accordance with the equities of the matter before it. For the same reasons that we found that neither the State statute of limitations nor the doctrine of laches would bar the requested equitable relief, we believe that the plaintiff is entitled to recover money damages as compensation for earnings lost as a result of his improper reinstatement.

## D. BINDING EFFECT OF THIS DECISION UPON THE DEFENDANT UNIONS

■ Defendant United States Steel Corp. asks us to hold that the interpleaded defendants United Steelworkers of America and United Steelworkers of America Local 4889 are bound by this decision and are, thereby, barred from presenting grievances on behalf of union members directly affected by our award of retroactive seniority to the plaintiff.

It is our opinion that we have no authority to prohibit a union from representing its members in the manner which it sees fit and that any determination to the contrary would be a serious abuse of our power. The instant decision, as we have stated, is limited to the particular facts and circumstances of this case. We cannot possibly attempt to predict and, in effect, to determine the bases of any claims which other employees may have against the defendant corporation and we would not attempt to coerce or influence their unions in any way in the handling of these claims. Of course, it goes without saying the United States Steel may rely on our opinion for whatever precedential value it may have in connection with future cases, but it is not for us to pass upon the rights and liabilities of individuals not now before the bar of this Court.