**Curtis R. BLAIR et al., Plaintiffs-Appellees,**

v.

**PAGE AIRCRAFT MAINTENANCE, INC., Defendant-Appellant.**

**No. 72–1129.**

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1972.

Rehearing and Rehearing En Banc Denied Dec. 1, 1972.

Edward E. Soule, Oklahoma City, Okl., for defendant-appellant.

Ira De Ment, U. S. Atty., Montgomery, Ala., Richard F. Schubert, Solicitor of Labor, U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Solicitor, Roger J. Martinson, Atty., Dept. of Labor, Atlanta, Ga., Alan S. Rosenthal, Greer S. Goldman, Dept. of Justice, Civ. Div., Washington, D. C., for plaintiffs-appellees.

Before TUTTLE, COLEMAN and CLARK, Circuit Judges.

COLEMAN, Circuit Judge:

The appellees are five reemployed veterans who brought separate suits against their employer, Page Aircraft Maintenance, Inc., seeking back pay for alleged violation of reemployment rights under 50 U.S.C.A. App., § 459.[1] The

1. § 459. Separation from service.
  *   *   *   *   *
(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate [as described in subsection (a) of this Act], and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospi-

heart of the complaints was that Page had, in contravention of that statute, refused to count the time spent in military service as time worked on the job for the purpose of determining each veteran's rate of pay. Page moved to dismiss the complaints on the ground that the actions were barred by the Alabama statute of limitations, Code of Alabama, Title 7, § 26. The motion was denied by the court, which concluded that the Alabama statute was not controlling. Subsequently, the district court, 336 F.Supp. 1011, entered judgment for each plaintiff for the entire amount sought. From that judgment Page appeals. We reverse.

### Curtis Blair

After completing his military service, Blair returned to work at Page on June 29, 1964. On October 28, 1965, sixteen months after his reemployment date, Blair requested assistance from the Office of Veterans Reemployment Rights, Department of Labor, to intercede on his behalf to obtain certain progressive wage increases. The Regional Director of Office of Veterans Reemployment Rights, after failing to reach an agreement with Page, referred the case to the

Department of Justice for its review on September 23, 1966.

### Delma Johnson

Johnson returned to work on June 21, 1965. On February 11, 1966, eight months after his reemployment, Johnson requested assistance from the Veterans Reemployment Office. The Regional Director referred the case to the Department of Justice on September 23, 1966.

### Roger Wilson

Wilson returned to work on September 8, 1965. On June 9, 1967, twenty-one months after his reemployment, Wilson sought aid from the Veterans Reemployment Office. The case was referred to the Department of Justice on September 12, 1967.

### Ronald Burns

Burns returned to work on June 13, 1966. Slightly less than a year later, on June 9, 1967, he requested assistance from the Office of Veterans Reemployment Rights. On September 12, 1967, Burns' file was referred to the Department of Justice.

---

talization continuing after discharge for a period of not more than one year—

\* \* \* \* \*

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay:

\* \* \* \* \*

(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and

shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

(3) Any person who holds a position described in paragraph (A) or (B) of subsection (b) [of this section] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces of the United States.

\* \* \* \* \*

*W. M. Giles*

Giles returned to Page on November 7, 1966. Three months later, on February 16, 1967, he requested Labor Department assistance in pursuing his claim. Giles' case was referred to the Justice Department on September 12, 1967.

On April 9, 1971, the Justice Department instituted suits on behalf of the five employees against Page.

During the period covered by these actions collective bargaining agreements were in force between Page and the International Association of Machinists Union, Local 2003. These contracts provided for certain "progressive wage increases" after every "four (4) months of work" or "sixteen (16) weeks of work"[2] until an employee reaches the maximum rate of his job classification. Leaves of absence of five days or more were not to be considered in computing the progressive wage increases.[3] The contracts were silent as to how leave for military duty was to be counted in computing the wage increases. Because of the disposition of this case on another point, it is unnecessary to consider Page's contention that leave for military duty is excluded for purposes of computing the time for wage increases.

■ There is no federal statute of limitations applicable to actions brought under 50 U.S.C.A. App., § 459. In such a situation the federal court must rely on the limitation period prescribed by the state where the controversy originated, O'Sullivan v. Felix, 233 U.S. 318, 322, 34 S.Ct. 596, 598, 58 L.Ed. 980 (1914); Balkam v. Woodstock Iron Co., 154 U.S. 177, 187–188, 14 S.Ct. 1010, 1014, 38 L.Ed. 953 (1894); Moviecolor Ltd. v. Eastman Kodak Co., 2 Cir., 1961, 288 F.2d 80, cert. den. 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26, 90 A.L.R.2d 252. In the situation now before us the Alabama statute of limitations controls. To determine which Alabama limitation statute is applicable to a Section 459 right, we must first ascertain under federal law the nature of the right and then decide which statute of limitations Alabama would have enforced if the action seeking similar relief had been brought in the state court. Sewell v. Grand Lodge of International Association of Machinists and Aerospace Workers, 5 Cir., 1971, 445 F.2d 545, 549, cert. denied, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972); Beard v. Stephens, 5 Cir., 1967, 372 F.2d 685, 688.

■ The applicable Alabama statute establishes a one year period of limitation for which an action of this kind must be brought.[4] However, the district court, after considering this statute, overruled appellant's motion to dismiss on the ground "that the relief sought by the appellees is equitable in nature, and that the Alabama statute of limitations is, accordingly, not controlling". The

---

2. The language in the 1964 contract used the term "four (4) months of work", whereas the 1966 and 1969 contracts spoke in terms of "sixteen (16) weeks of work."

3. Article XVIII, § 3 of each of the three collective bargaining agreements between the Machinists Union and Page Aircraft held as follows:

   (a) An employee classified within a labor grade rate range as set forth in Section 1 of this Article, will be advanced to the maximum rate of his labor grade rate range in increments of ten (10) cents per hour or such part thereof, as necessary to reach such maximum at intervals of four (4) months [or sixteen weeks] of work.

   (b) Paid vacations, observed holidays, time spent on leave of absence which is less than five (5) work days and accumulated absence of less than five (5) work days during said progression period as provided in Section 2 and paragraph (a) above, will be counted in computing such progression periods.

4. Code of Alabama, Title 7, § 26. Limitation of one year.

   The following must be commenced within one year:

   \*     \*     \*     \*     \*

   Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated.

court was obviously basing its holding that equitable relief was involved on the appellees' original bill of complaint which sought, in addition to a recovery of lost wages, job security, seniority, and other benefits. Apparently the district court did not have its attention directed to the written stipulation in which appellees stated that they sought "only to recover for alleged loss of pay". Since the only relief requested was the recovery of money, equitable relief will not lie, 27 Am.Jur.2d Equity § 112. This was a case at law and not in equity. The matter therefore properly fell within the ambits of the Alabama statute of limitations.

Even if the relief prayed for had been of an equitable nature, appellees would confront Code of Alabama, Title 7, § 18, which provides:

"All other civil actions, in *law or equity,* must be commenced after the cause of action has accrued within the period prescribed in this chapter and not afterwards, unless otherwise specifically provided for in this Code." [5] [Emphasis added].

Code of Alabama, Title 7, § 31, also provides:

"This article shall apply to and govern both courts of law and courts of equity, whether the claim asserted be *legal or equitable debts or obligations.*" [6] [Emphasis added].

Finally, this Court, in Hart v. First National Bank of Birmingham, Ala., 373 F.2d 202, 204–205 (1967), laid to rest any doubt as to the applicability of the statute when it held that it applied to both legal and equitable cases.

■■ The dates of reemployment of the five appellees-employees range from June 29, 1964, to November 7, 1966. Assuming, without deciding, that pursuant to 50 U.S.C.A. App., § 459(c) each of the appellees were entitled to one year of mandatory reemployment, this one year period expired for the last ap-

pellee on November 7, 1967. The limitation period began to run on each employee's time from the day his right to action accrued. The last day of mandatory reemployment constituted the final day on which the cause of action accrued. The cause of action for the last employee to be reemployed accrued on November 7, 1967, and he had one year from that date in which to file suit. However, no suit was filed until almost two and one half years later, April 9, 1971. Therefore, the Alabama one year statute of limitations bars the action.

■■ Much emphasis is made of the fact that the delay in bringing suit was not the fault of the employees but instead was due to the tardiness of the Departments of Justice and Labor. Appellees contend that the delay is the result of governmental bureaucratic procedure and therefore they would be unjustly penalized if they are precluded from bringing suit. But delays by counsel do not toll limitations. To hold otherwise is to defeat the very purpose of limitational statutes. As was quite succinctly stated in another Alabama case before this Court:

"It is of course unfortunate for the plaintiff to be barred from enforcing what may be a meritorious claim, but that is always the consequence when a statute of limitations applies. It is a statute of repose, designed to compel suit within a reasonable time in the interest of society, serving to prevent perjuries, frauds, and mistakes. Its purpose is to force a litigant to get moving, and to get moving fast—to pursue every avenue of relief promptly, while the evidence is fresh and the witnesses available." Dedmon v. Falls Products Incorporated, 5 Cir., 1962, 299 F.2d 173, 178.

In his partially dissenting opinion, Judge Tuttle expressed the view that

"The majority penalize the veteran for this inevitable delay occurring after his complaint is filed with the La-

5. "This chapter" is Chapter 2 of Title 7 which includes Section 26.

6. "This article" is Article 1 of Chapter 2 of Title 7. Article 1 included Section 26.

bor Department but before the Government subsequently files suit against the employer. This would disembowel the Act."

The majority respectfully disagrees. The proceedings with reference to Blair and Johnson were referred to the Department of Justice on September 23, 1966. The proceedings on behalf of Wilson, Burns, and Giles were referred to the Department of Justice on September 12, 1967. The Department did not file suit until April 9, 1971. This was 4½ years after the Department got the case as to the first two men and 3½ years after the Department got the case as to the last three claimants.

We have held, page 7 ante, that the last date for the filing of suit as to any of the men was November 7, 1968. On that date the Department had been in charge of the first two claims for over two years. As to the latter three, the Department had been in command for fourteen months. Both of these periods are in excess of the limitations. Even so, suit was delayed for an additional 2½ years.

With deference, it would "disembowel" the Act if this Court were to hold that the Department of Justice, contrary to the law applied to other litigants, may ignore the limitations clearly applicable under the Act as Congress saw fit to enact it. Obviously, Congress intended that the Department should move with reasonable expedition, at least within the time allowed other litigants, to the end that relief, if due, would not be unduly delayed. Hope long deferred maketh the heart sick. Moreover, if we were to follow that course, we would deprive the employer of the right conferred by Congress, to expect suit within the time required by law, or not at all, which, of course, is the purpose of all statutes of limitation.

As a matter of policy, which is to be set by Congress and not by the Courts, our decision will strengthen, rather than impede, the speedy receipt of the remedies which Congress sought to protect.

The judgment of the District Court is reversed, with directions to dismiss the complaint.

Reversed.

TUTTLE, Circuit Judge (concurring in part and dissenting in part):

While I concur in the judgment to reverse the judgment of the trial court, with deference I must dissent from a portion of the majority rationale and from the direction to dismiss the complaint.

Appellants seek relief based upon alleged violations of reemployment rights under 50 U.S.C.A. App. § 459. To this federal substantive right of reemployment, there exists no complementary federal limitations statute. Federal law therefore is silent as to how long a period after an alleged violation of Section 459 is open to a plaintiff to file suit for relief.

Under such circumstances, the Supreme Court has held that the federal courts must rely on the limitation period prescribed by the state where the controversy originated. O'Sullivan v. Felix, 233 U.S. 318, 322, 34 S.Ct. 596, 598, 58 L.Ed. 980. The trial court therefore erred in holding that the Alabama statutes of limitations were irrelevant to this controversy. The majority of this court correctly notes that under Code of Alabama Title 7, § 26, a limitation of one year governs the period within which an action under section 459 may be brought, be that action in federal or state court.

I cannot agree, however, that a federal court which applies Alabama section 26 to a federal section 459 complaint is bound to adhere to Alabama's state court policies regarding the *tolling* of the statute of limitations.

In Mizell v. North Broward Hospital District, 5 Cir., 1970, 427 F.2d 468, we held that "although the federal courts apply a state limitations statute in suits to vindicate a federal right, they look to the federal purpose, policy and intent of Congress as to the objectives of the leg-

islation in determining whether the pursuit of state remedies tolls this statute." 427 F.2d 474. In holding the state statute of limitations irrelevant where a federal right was the issue, the District Court did not reach the issue of how to toll the Alabama limitations statute. While the majority herein does reach that latter question, it ignores Mizell, and I believe incorrectly states the law to be applied, and summarily dismissed a claim meriting serious consideration.

The standard established by Mizell requires that federal courts look to the policy of the *Federal substantive statute* to determine whether or not to toll the state limitations statute in a particular instance. Yet the court here states that "delays by counsel do not toll limitations. To hold otherwise is to defeat the very purpose of limitation statutes." Since the purpose of that limitation statute is "to force a litigant to get moving, and to get moving fast," Dedmon v. Falls Products Incorporated, 5 Cir. 1962, 299 F.2d 173, 178, the majority conclude that the federal statutory right is defeated by counsel's delay.

Mizell is overruled sub silentio by failing to consider its application to the facts of the case. The purpose of the state limitational statute rather than the purpose of the *federal substantive statute* is given as to touchstone for the decision whether or not to toll the limitation period. And the district court is ordered to dismiss summarily appellant's complaint.

What is the nature of the alleged "delays by counsel," which the majority, in effect, say "do not toll limitations?" What is the effect of delays by counsel upon the statutory scheme of 50 U.S.C.A. App. § 459?

The veteran files a complaint with the Secretary of Labor, whose responsibility it is to "render aid in the replacement in their former positions of persons who have satisfactorily completed any period of active duty in the armed forces." Section 459(h). The facts must be gathered; the possibility of a settlement explored; the Justice Department consulted; the United States Attorney advised; and ultimately, the suit authorized.

The majority penalize the veteran for this inevitable delay occurring after his complaint is filed with the Labor Department but before the Government subsequently files suit against the employer. This would disembowel the Act. It would render subsection (h) a dead letter, forcing the veteran to secure a private attorney ab initio to sue on his behalf, circumventing the informal but necessarily time-consuming efforts of the Secretary of Labor.

Since the tolling rule announced here today would undermine the federal substantive right of the appellants and reverse the rule of law which this court enunciated only two years ago in Mizell, I respectfully dissent from this aspect of the majority decision. I think the case should be remanded to the trial court to consider the application of the tolling principle enunciated in Mizell.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

TUTTLE, Circuit Judge, dissents from the denial of the petition for rehearing for the reasons stated in his special concurring opinion.