United States Court of Appeals,

Eleventh Circuit.

No. 95-8227.

Catherine ROZAR, Wayne Beard, Anita Ashley, Vance Heard, Royel Lee Hines, Essie B. Brantley, Joyce Cummings, Maceo Rozar, Homer L. Berry, Sr., Tommy Lee Beard, Individually and as Representative of Save Our Neighborhood Community Neighborhood Association, Plaintiffs-Appellants,

v.

D.M. MULLIS, Individually and as Member of the Laurens County Board of Commissioners, Roscoe Brower, Individually and Member of the Laurens County Board of Commissioners, Emory Lake, Individually and as Member of the Laurens County Board of Commissioners, Michael Wolfe, Individually and as Member of the Laurens County Board of Commissioners, Harold Reheis, Individually and as Director of the Environmental Protection Division of the Georgia Department of Natural Resources, Environmental Protection Division of the Georgia Department of Natural Resources, Laurens County, Georgia, Defendants-Appellees.

June 17, 1996.

Appeal from the United States District Court Southern District of Georgia. (No. CV-394-51), Dudley H. Bowen, Jr., Judge.

Before TJOFLAT, Chief Judge, and RONEY and CAMPBELL[*], Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge:

Plaintiffs, as individuals and representatives of Save Our Neighborhood Community Neighborhood Association, sued Laurens County in Georgia, members of its Board of Commissioners ("County Board"), the Georgia Environmental Protection Division ("EPD"), and its director,[1] alleging racial discrimination in the siting and

---

[*]Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

[1]Defendants include D.M. Mullis, Roscoe Brower, Emory Lake, and Michael Wolfe, individually and as members of the Laurens County Board of Commissioners, Laurens County ("county defendants") and Harold Reheis, individually and as director of the Environmental Protection Division of the Georgia Department

permitting of a solid waste landfill in their neighborhood. Plaintiffs appeal from orders, entered by the United States District Court for the Southern District of Georgia, denying an injunction and granting summary judgment to the defendants on the ground that the plaintiffs' federal claims were time-barred. We affirm, although on grounds different in some respects from those stated by the district court.

I.

This case arises from Laurens County's efforts to construct a solid waste landfill to replace its existing one, which had almost reached capacity and was becoming contaminated. In 1989 the County Board hired an engineering firm, Tribble & Richardson, Inc., and a local property expert, Curtis Beall, to investigate potential sites suitable for a new landfill. Beall prepared a list of more than twenty possible sites, some of which were readily rejected because of insufficient useable acreage or the owner's unwillingness to sell. The record contains evidence that additional sites were added to the list as others were eliminated.

In January 1991 the County Board met to discuss a site at Scotland Road, which the engineers had recommended. Citing concerns such as the sufficiency of useable land there, the Board voted to table any action until alternatives were studied. Plaintiffs say that the site was not pursued because white residents protested. The record suggests, however, that most of the area residents were African-American; both an African-American

of Natural Resources, Environmental Protection Division ("EPD") of the Georgia Department of Natural Resources ("state defendants"), and John Doe.

and a white church were nearby.

The list of potential landfill sites was expanded to include Old Macon Road, a mixed racial neighborhood located approximately three miles from the existing solid waste landfill. The record indicates that this site was brought to the County Board's attention when the property owner offered to sell a sizable tract (more than 400 acres). Preliminary testing was done on the Old Macon Road property in February 1991, at which time a renewable option to purchase the property was signed. In November 1991, at a meeting attended by at least one plaintiff, the County Board voted to hold a public hearing the next month to decide whether to construct the landfill there and to apply to the state for a permit. Notice of the date, time, and purposes of the meeting was published in the local newspaper in the weeks before the meeting and was posted at the proposed site and at the local courthouse, where the meeting was to be held.

At least one named plaintiff attended the public meeting on December 3, 1991 and protested the proposed siting of the landfill near plaintiffs' homes. The County Board, which was comprised of one African-American and four white members, voted for the Old Macon Road site by three to two. The three who supported the site were white.

The County Board promptly applied to the state for a permit to construct the landfill at Old Macon Road, as required by the Georgia Comprehensive Solid Waste Management Act, O.C.G.A. § 12-8-

20 *et seq.* ("CSWMA").[2]  In late December 1991, the Georgia EPD notified the Board that, after a preliminary review of the application, the Old Macon Road site seemed "quite complex from a hydrogeological point of view."  The letter stated that an expanded subsurface investigation was needed, and that it "may demonstrate that the site is not suitable."

Land studies continued, and the property ultimately was determined to be acceptable for solid waste disposal.  The EPD so notified the County Board in a "site suitability" letter on August 31, 1992.  The letter emphasized that before a permit could be granted, all state requirements had to be met, including the Board's submission and the State's approval of a solid waste landfill design and operational plan.  The County Board, having received the site suitability letter, voted on September 15, 1992 to purchase the Old Macon Road property (for which an option to purchase had been renewed since the initial agreement in February 1991).  The purchase took place on September 28, 1992.

The following spring, the County Board initiated a "facility

---

[2]The Act prohibits the construction or operation of a solid waste disposal facility without a permit obtained from the director of the EPD.  A permit applicant must comply with many statutory and regulatory requirements, such as showing need for the facility, compliance with zoning or land use ordinances, data on the geologic and hydrogeologic suitability of the site, and a suitable design and operation plan.  A county that is applying for a permit also must follow detailed procedures, including but not limited to notifying the public of the meeting at which a siting decision is to be made;  notifying the public after receiving a site suitability determination from the state;  holding a public hearing to inform affected residents of the opportunity to engage in a "facility issues negotiation process" to discuss facility operation issues;  and notifying the state if the negotiating parties reach or do not reach consensus on negotiated issues, in order to continue the permit application process.

issues negotiation process" as required by state law. *See* O.C.G.A. § 12-8-32(f). Some plaintiffs participated, voicing concerns with issues such as the hours and methods of the landfill's operation, fencing around the property, and traffic flow. Race-related concerns were not raised, apparently because some plaintiffs had been advised by the facilitator that that was not an appropriate forum in which to do so. Following completion of the negotiation process, the Board proceeded with its permit application, and the EPD issued a permit on September 3, 1993.

Plaintiffs appealed from the EPD's issuance of the permit to the Georgia Board of Natural Resources. County Board representatives intervened as respondents. Plaintiffs challenged on numerous grounds whether respondents had complied with statutory and regulatory requirements (*e.g.,* public notice provisions, protections against contamination of the wells). Allegations of race discrimination were not raised. An administrative law judge held an evidentiary hearing and issued an order in June 1994 affirming the issuance of the permit upon compliance with one condition (involving acceptance of out-of-county waste). The Laurens County Superior Court affirmed the ALJ's order on November 4, 1994.

Meanwhile, on August 15, 1994, plaintiffs filed this civil complaint in the federal district court. Seeking damages and a preliminary and permanent injunction, they asserted various claims, including that the county and state defendants had committed acts of racial discrimination under color of law and had conspired to deprive them of federally secured rights. After a hearing, the

district court denied a preliminary injunction in December 1994. The court subsequently allowed the county and state defendants' motions for summary judgment on the solely asserted ground that plaintiffs' federal claims were time-barred. This appeal followed.

## II. Statute of Limitations

### A. The District Court Opinion

In the complaint, defendants were charged with race discrimination in violation of the Equal Protection Clause and 42 U.S.C. § 1983, 1985, and 2000d *et seq.* They were also charged with a taking of plaintiffs' life, liberty or property without due process of law, and a nuisance in violation of Georgia state law. Provisions of the Georgia CSWMA were challenged as being unconstitutional on their face and as applied.

In granting summary judgment to defendants on the ground that plaintiffs' federal claims, filed on August 15, 1994, were untimely, the district court grouped together all federal claims against both the county and state defendants. It held that the applicable limitations period was two years, under the state statute of limitations for personal injury actions, O.C.G.A. § 9-3-33. The court accepted defendants' argument that the two-year period began to run when the County Board voted on December 3, 1991 to select Old Macon Road as the new landfill site. The district court stated that at the time of that vote, several plaintiffs knew or should have known of the injuries of which they later complained. The district court rejected plaintiffs' argument that the limitations period did not begin to run against the county defendants until the Board made final its selection of a site by

exercising its option and purchasing the landfill property in September 1992.  The court also rejected, without explanation, plaintiffs' argument that, since state authorities were not yet involved by the time of the County Board's site selection vote on December 3, 1991, plaintiffs' action against the state defendants could not have accrued then, and must have accrued, at the earliest, when the EPD, a state agency, issued a site suitability letter on August 31, 1992 (if not later when the EPD issued a final permit on September 3, 1993).  Accrual by these dates would have rendered the suit against the state defendants timely.[3]

We review the district court's grant of summary judgment *de novo* to determine whether the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In so doing, we construe the facts in the light most favorable to the non-movant, plaintiffs.  *E.g., Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir.1995).

B. Applicable Limitations Period

The district court ruled, and the parties do not dispute, that Georgia's personal injury limitations period of two years, O.C.G.A. § 9-3-33, applies to all the federal claims.  We fully agree,[4]

---

[3]Having granted summary judgment on the federal claims, the district court declined to exercise supplemental jurisdiction over the state law nuisance claim.

[4]In saying that the Georgia personal injury limitations period applies to plaintiffs' federal claims, we exclude the claims that the notice provisions of the Georgia CSWMA on their face and as applied violate the Due Process Clause of the Fourteenth Amendment.  Plaintiffs included these claims in their complaint, but have not addressed them on appeal.  Accordingly, we deem the matter to have been waived.  *E.g., Stepak v. Addison,*

discussing the matter briefly only because this is the first time this circuit has had occasion to address the limitations period applicable to section 2000d (Title VI of the Civil Rights Act of 1964).[5]

As to the claims brought here under 42 U.S.C. §§ 1983[6] and 1985,[7] precedent is clear that these are measured by the personal injury limitations period of the state. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985) (section 1983); *Mullinax v. McElhenney,* 817 F.2d 711, 716 n. 2 (11th

---

20 F.3d 398, 412 (11th Cir.1994).

[5]Section 2000d provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

[6]Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[7]Section 1985(3) provides in relevant part that injured parties may have an action for damages if

> two or more persons in any State or Territory conspire, ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ....

Cir.1987) (section 1983); *Williams v. City of Atlanta,* 794 F.2d 624, 625 n. 1 (11th Cir.1986) (applying *Wilson* retroactively to section 1983 claim and accepting appellants' concession that the same limitations period applied to sections 1981, 1985, and 1988 claims); *Drayden v. Needville Indep. Sch. Dist.,* 642 F.2d 129, 131-132 (5th Cir.1981) (section 1985).

As to the claim brought under section 2000d, while neither the Supreme Court nor this circuit has decided whether a state's personal injury limitations period applies, the other circuits that have faced the question have so ruled, and we agree with their reasoning. In *Baker v. Board of Regents,* 991 F.2d 628 (10th Cir.1993), the Tenth Circuit reasoned that section 2000d is "closely analogous" to sections 1983 and 1981: all are civil rights statutes aimed at providing equal rights under the law and preventing discrimination against a person and the resulting "impairments to the rights and dignities of the individual." *Id.* at 631. Characterizing section 2000d claims as personal injury actions for limitations purposes "promotes a consistent and uniform framework by which suitable statutes of limitations can be determined for civil rights claims," and serves Congress' objectives by avoiding uncertainty and "creat[ing] an effective remedy for the enforcement of federal civil rights." *Id.* (internal citations omitted). The Eighth Circuit followed *Baker* in *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 618 (8th Cir.1995) (noting that "a plaintiff suing a federally-supported program for racial discrimination may bring a claim under any one of these three laws [sections 1983, 1981, or 2000d]"). *See also Taylor v.*

*Regents of Univ. of Cal.,* 993 F.2d 710, 712 (9th Cir.1993) (applying same state personal injury limitations period to sections 1983 and 2000d claims), *cert. denied,* --- U.S. ----, 114 S.Ct. 890, 127 L.Ed.2d 83 (1994).

Finding our sister circuits persuasive as to section 2000d, we hold that Georgia's two-year personal injury limitations period applies to the claim under that provision as well as those under sections 1983 and 1985.

C. Accrual of the Actions

We turn next to whether plaintiffs' causes of action against each group of defendants accrued before or after August 15, 1992, this being the date two years before the present complaint was filed on August 15, 1994. Federal law determines when a federal civil rights claim accrues. *Mullinax,* 817 F.2d at 716. The general federal rule is that " "the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.' " *Id.* (internal citation omitted) (section 1983 claim); *Drayden,* 642 F.2d at 132 (section 1985 claim). Plaintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury. *Mullinax,* 817 F.2d at 716. This rule requires a court first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them. *See Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir.1993).

The district court concluded that all of plaintiffs' claims accrued against both state and county defendants on December 3,

1991, when the County Board voted to select Old Macon Road as the landfill site.  While we agree as to the county defendants, we disagree that claims against the state defendants accrued by then.

1. County Defendants

We begin by identifying the injuries allegedly caused by the county defendants.  Plaintiffs contend that the county defendants deprived them of the Fourteenth Amendment guarantee of equal protection of the laws by furthering a pattern and practice of siting landfills in predominantly minority areas.  In support, plaintiffs assert that the county defendants (1) rejected the Scotland Road site because of white residents' protests;  (2) added plaintiffs' neighborhood to an already-developed list of potential landfill sites, despite the presence of certain unsuitable land characteristics which had led other proposed sites to be rejected; and (3) voted by an all-white majority to construct the landfill in their neighborhood.  These allegedly racially motivated acts are said to have had a discriminatory impact by harming the African-American residents' property values, health, and welfare.  Under the above theory, we readily agree with the district court that the constitutional injury allegedly inflicted by county defendants upon plaintiffs took place when the County Board—for what plaintiffs say were racially discriminatory reasons—voted to select Old Macon Road as the site for the new landfill.

This leaves as a remaining question when the plaintiffs knew or should have been aware of the injury.  It is uncontroverted that following notice published in a local newspaper and posted at the courthouse and at the proposed site, the County Board's vote

occurred on December 3, 1991 at a public meeting attended and participated in by at least one named plaintiff. Plaintiffs did not argue in the district court, nor do they argue on appeal, that the remaining plaintiffs were justifiably unaware of what occurred at the December 3, 1991, public meeting. [8] The burden was on plaintiffs, had any of them wished to maintain that they were justifiably ignorant at the time of or immediately after the County Board's allegedly discriminatory action, to make such a showing. *See Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 717 (7th Cir.) (African-American church asserting that local board's zoning vote was racially discriminatory has the burden of showing "that even with the exercise of reasonable diligence it could not have known of the purported injury inflicted by the Village" on the date of the vote), *cert. denied,* --- U.S. ----, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994). Besides the evidence of public notice and the presence of one plaintiff at the meeting, the record indicates that at least one of the named plaintiffs then knew of county defendants' earlier tabling of the proposal to use the Scotland Road site, an action plaintiffs say was done to favor white residents. *Cf. Calhoun v. Alabama Alcoholic Beverage Control Bd.,* 705 F.2d 422, 425 (11th Cir.1983). On this record, we affirm the district court's conclusion that plaintiffs' constitutional equal protection claim accrued against the county defendants no

___

[8]At the hearing on the preliminary injunction, plaintiffs criticized the absence of individual notice to residents in advance of the meeting. Their witnesses indicated, however, having received notice of the site's consideration by word of mouth; and no evidence complaining of a lack of plaintiffs' actual awareness of the alleged injurious vote was introduced, nor was such a contention pursued on appeal.

later than December 3, 1991, at which time the alleged injury was inflicted by county action taken at a public hearing.

Plaintiffs argue below and on appeal that their equal protection claim did not accrue until the county defendants actually acquired an ownership interest in the landfill property (*i.e.,* on September 21 or 28, 1992, the dates when county defendants exercised the option they held on the property and actually purchased it). But the Commissioners' vote selecting the site in question, taken at their December 3, 1991 meeting—a vote that plaintiffs say was racially motivated—was the operative decision amounting to the alleged constitutional injury. While a state permit and final purchase still lay ahead, the county defendants' unconstitutional act, if such it was, occurred when they formally committed the County Board to the choice of this site. *See Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (employment discrimination claim accrued when "the operative decision was made—and notice given—in advance of a designated date on which employment terminated"; "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful") (citing *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)) (emphasis omitted); *cf. Cathedral of Joy Baptist Church,* 22 F.3d at 718-719; *Kelly,* 4 F.3d at 512; *Calhoun,* 705 F.2d at 425.

Plaintiffs also charge the county defendants with violating their due process rights. The precise nature of plaintiffs' due process claim is unclear from the broadly worded complaint.

Plaintiffs assert that the county defendants' acts authorized a devaluing and a taking of their property without due process, endangering their health, welfare, and safety. At bottom, plaintiffs seem to be charging arbitrary and capricious governmental action.

Whatever its precise theory, and however it differed legally from the equal protection claim, the due process claim relied on the same factual scenario as the former. The county defendants were alleged to have acted arbitrarily in selecting Old Macon Road as the landfill site—their selection is said to have been influenced by impermissible racial considerations, rather than by the objective criteria (*e.g.* useable acreage, wetlands) that were applied in rejecting other fairly comparable sites. The alleged constitutional injury by the county flowed, therefore, from the same allegedly arbitrary vote, taken on December 3, 1991, selecting the Old Macon Road site. Accordingly, this claim against the county defendants was also time-barred, as the district court found.

Plaintiffs further allege that the county and state defendants conspired to violate their statutory right to equal protection of the laws under section 1985. Appellants' briefs, however, do not suggest, and the record lacks any evidence to show, the date when the alleged conspiracy began; further, at oral argument, appellants' counsel conceded the absence of any conspiracy claim against the state defendants. Accordingly, we hold that plaintiffs have abandoned on appeal their claim that the county and state defendants together conspired to deprive them of equal protection

of the laws. To the extent that plaintiffs are deemed to have alleged a conspiracy among just the county defendants themselves, such a conspiracy would have accrued on the date of the site selection vote if not earlier, rendering the claim time-barred.

We therefore affirm the district court's holding that plaintiffs' federal statutory and constitutional claims against the county defendants are time-barred.

2. State Defendants

Plaintiffs' claims against the *state* defendants, in contrast to those against the county defendants, were erroneously found to be untimely—although, for reasons stated below, we affirm the granting of summary judgment on a different ground. Nothing in the record suggests that the state defendants took part in the County Board's allegedly biased vote on December 3, 1991 to select Old Macon Road for the new landfill. The state defendants only became significantly involved later, during the permitting process. If, therefore, the state defendants committed any equal protection and substantive due process violations at all,[9] those wrongs were most likely inflicted, it would seem, either through some kind of impliedly discriminatory site suitability determination by the EPD

---

[9]Plaintiffs also allege racial discrimination by a state agency receiving federal funds, in violation of section 2000d (Title VI). Like the constitutional equal protection claim, Title VI requires a showing of intentional discrimination absent reliance (of which there was none here) on an agency regulation proscribing acts with a discriminatory impact. *See Elston v. Talladega County Bd. of Educ.,* 997 F.2d 1394, 1406 (11th Cir.1993) (citing *Alexander v. Choate,* 469 U.S. 287, 292-294, 105 S.Ct. 712, 715-716, 83 L.Ed.2d 661 (1985); *Guardians Ass'n v. Civil Serv. Comm'n of New York City,* 463 U.S. 582, 584 n. 2, 103 S.Ct. 3221, 3223 n. 2, 77 L.Ed.2d 866 (1983)). For accrual purposes, therefore, the Title VI and equal protection claims against the state defendants should be treated similarly.

(August 31, 1992), or impliedly discriminatory decision to issue the final permit (September 3, 1993). Even if plaintiffs learned of their injury on the earlier date, the complaint was filed on August 15, 1994, within the two-year limitations period. Summary judgment based on the statute of limitations (the ground asserted by the state defendants in their summary judgment motion) was not warranted.

   III. Lack of Any Supported Claim Against the State Defendants

   While the statute of limitations did not bar the claims against the state defendants, an appellate court may affirm a grant of summary judgment on any alternative ground fairly supported by the record. *E.g., Railway Labor Executives' Ass'n v. Southern Ry. Co.,* 860 F.2d 1038 n. 2 (11th Cir.1988) (citation omitted). Here, we find as an alternative ground the complete absence of any showing of discriminatory conduct by the state defendants, coupled with the apparent abandonment of any such claims by concession during oral argument before us. We recognize, of course, that an appellate court's authority to affirm summary judgment on an alternative ground is limited by the principle that the parties must have

> had a full and fair opportunity to develop facts relevant to the decision.... Where summary judgment is granted on one issue, an appellate court may not extend that judgment to another issue under the guise of affirming the "result below" when the effect is to preclude the losing party from "disput(ing) facts material to that claim."

> *Heirs of Ude C. Fruge v. Blood Servs.,* 506 F.2d 841, 844 n. 2 (5th Cir.1975) (citing *Fountain v. Filson,* 336 U.S. 681, 683, 69 S.Ct. 754, 755-756, 93 L.Ed. 971 (1949)) (remanding on question of negligence, where plaintiffs "were never called upon to produce any Rule 56(c) materials" on the merits of their claim).

In the present case, two considerations lead us to conclude that we properly may and should affirm the district court's order granting summary judgment to the state defendants, on the alternative ground that plaintiffs have clearly failed to demonstrate the existence of any viable claim against the state defendants. First, the evidentiary hearing on plaintiffs' request for a preliminary injunction against all the defendants, which forms a part of the record in this appeal, provided at least partial opportunity and inducement for plaintiffs to present whatever facts they could in support of their claims against the state defendants. At that hearing, plaintiffs had an opportunity—and to obtain an injunction were required—to show a substantial likelihood of success on the merits of their claims (including equal protection and due process) against the various defendants. The evidence they adduced not only failed to show a probability of success against the state defendants but, more to the point here, was wholly insufficient as a matter of law to support a finding that the state defendants had engaged in intentional racial discrimination including the pattern or practice of discrimination in the siting of landfills asserted as to the county defendants. It was the county, not the state, defendants who selected the site. The principal responsibility of the state defendants lay in ascertaining the technical suitability of an already chosen site. While plaintiffs and others opposed the state's granting of a permit for the county's choice on various technical grounds, they did not at that time charge the county with discrimination, raising the question of how state authorities would

even know that discrimination was an issue. It remains unclear to this moment on what factual basis plaintiffs now charge that the state defendants' granting of the permit was racially motivated. *See Village of Arlington Heights v. Metropolitan Housing Devel. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 563-564, 50 L.Ed.2d 450 (1977) (evidence of both discriminatory intent and discriminatory impact are required to show an equal protection violation, absent an unusually stark pattern); *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976); *see also Terry Properties, Inc. v. Standard Oil Co.,* 799 F.2d 1523, 1535 (11th Cir.1986) (no equal protection violation where the record did not show discriminatory intent, but rather showed that legitimate decisionmaking factors were used in the siting of an industrial plant).

Having said this, we recognize that the hearing on the preliminary injunction was not the full equivalent of an opportunity to make submissions in response to a summary judgment motion based on an allegation that plaintiffs lacked a valid claim against the state defendants. If this were all, we would be reluctant to find that the injunctive hearing, standing alone, sufficed for present purposes. But there was more. At oral argument, appellants' counsel conceded, in response to panel inquiry, that, "As to the state defendants, I'm not aware of anything [relative to violating the Fourteenth Amendment], in all candor with the court at this point."[10] Adding this concession to

---

[10] We note in fairness to counsel, who was not the same counsel as appeared in the district court, that the panel's query was prefaced by a reference to whether, in light of Rule 11,

the failed opportunity to present evidence against the state defendants at the preliminary injunction hearing, we can see no unfairness in affirming the judgment in favor of the state defendants without affording plaintiffs a further opportunity on remand. We conclude that the summary judgment granted against the state defendants should stand for the independent reasons just stated.

## IV. Preliminary Injunction

Plaintiffs also appeal from the district court's refusal to issue a preliminary injunction enjoining defendants from carrying out the construction of the landfill at Old Macon Road. Among other factors, the granting of such an injunction would call for a finding by the district court that plaintiffs have a substantial likelihood of success on the merits. Since the claims against the county defendants were, as the court later found and as we affirm, time-barred, an injunction against them was properly denied. Further, for the reasons stated above, plaintiffs have failed to put forward any viable federal statutory or constitutional claims against the state defendants. It was therefore not an abuse of discretion to deny injunctive relief against the state defendants.

AFFIRMED.

---

Fed.R.Civ.P., the claim against state defendants would be pursued on remand. Rule 11 provides for imposition of sanctions for the pressing of unsupported claims.