[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11680

Non-Argument Calendar

_____

DR. ROBERT H. WAINBERG,

Plaintiff-Appellant,

*versus*

JAMES MELLICHAMP,
THOMAS A. ARRENDALE,
THOMAS M. HENSLEY, JR.,
STEWART SWANSON,
DOCK C. SISK, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:22-cv-00155-MHC

_____

Before ROSENBAUM, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Dr. Robert H. Wainberg sued several officers and trustees of Piedmont University. He alleged that they (1) conspired (a) to retaliate against him for filing a prior lawsuit and (b) to deter witnesses from participating in that lawsuit and (2) negligently refused to prevent that conspiracy. The district court dismissed Wainberg's claims as time-barred. It did so based on its conclusion that the statute of limitations ran from the first overt act Wainberg alleged as part of the conspiracy. But under our precedent, each overt act triggers its own statute of limitations, so Wainberg's claims arising out of some overt acts were timely. So we vacate the district court's dismissal and remand for further proceedings.

## I.    BACKGROUND

Plaintiff-Appellant Dr. Robert H. Wainberg was a tenured biology professor at Piedmont University. Wainberg previously filed a separate lawsuit against Piedmont (the "First Lawsuit"). In the First Lawsuit, Wainberg alleged breach of contract and

violation of the implied duty of good faith and fair dealing. *Wainberg v. Piedmont Univ.*, No. 2:19-cv-00251. That case remains pending.[1] In that lawsuit, Wainberg alleged that Dr. James Mellichamp, Piedmont's President, engaged in sexual harassment and discrimination and retaliated against Wainberg for opposing that conduct by terminating Wainberg's employment contract.

Dr. Richard M. Austin, Jr., a former Piedmont biology professor, testified on Wainberg's behalf by deposition and affidavit. Austin testified that Mellichamp (1) purchased alcohol for minors and took them to a gay bar on a college-sanctioned trip, (2) made unwanted sexual overtures and sexual innuendos towards Austin, (3) sexually assaulted Austin by grabbing his buttocks, and (4) covered up a female employee's complaint of sexual harassment against a University Vice President. Austin also testified that he complained to Piedmont's then-President about Mellichamp's sexual harassment. But according to Austin, Piedmont did nothing. Then, Austin recounted, Mellichamp retaliated by targeting Austin's son (a student) and family with excess scrutiny and discipline.

Other witnesses made similar allegations. Those witnesses, current and former Piedmont professors and students, testified that, among other things, Mellichamp (1) failed to act against a faculty member who was sexually harassing and stalking a student, (2) retaliated against another student for complaining of sexual harassment by a coach, and (3) terminated a faculty member who

---

[1] Specifically, the parties have completed discovery and filed cross-motions for summary judgment.

reported an administrator who was engaging in inappropriate conduct with a student.

In response to Austin's testimony, Wainberg asserts that Piedmont's officers and directors—including the Defendant-Appellees in this case—retaliated against Austin to deter him and other witnesses from testifying in the future. Specifically, Wainberg alleges the following acts of retaliation, among others:

> 1. On March 14, 2019, the day after Austin's deposition, Dean Steven Nimmo sent an email to the chair of Austin's department asking if the chair had taken care of "the biology problem," a reference to Austin.
>
> 2. On May 1, 2019, Mellichamp submitted an affidavit accusing Austin of lying in his sworn testimony and attaching Austin's son's confidential Piedmont disciplinary records.
>
> 3. On June 13, 2019, Fred Bucher (Piedmont's Title IX Director at the time) emailed the City of Demorest, Georgia, (of which Austin was the Mayor) that Austin had a "personal issue" and was "trying to stick it to the college for some perceived wrong" and that Austin needed to "grow up."
>
> 4. On August 7, 2020, Piedmont's General Counsel Patrick McKee sent a letter to Austin, the City Council, and City of Demorest employees threatening litigation based on the City's 2018 decision to raise water and sewer rates. Wainberg alleges that the lawsuit was actually motivated by Austin's testimony. McKee's letter insisted that any resolution

would require termination of Austin's employment with Piedmont.

5. On November 23, 2020, Piedmont University filed a lawsuit against Austin seeking Austin's termination from Piedmont and his removal from his position as Mayor. Piedmont claimed that Austin's testimony in the First Lawsuit was false and in bad faith.

Following his testimony, Austin sent an email to Piedmont's Title IX Office claiming that "through the actions of President James Mellichamp . . . Piedmont has repeatedly engaged in retaliation, harassment, and intimidation."

On August 7, 2022, Wainberg sued. He alleged that Defendants had (1) conspired (a) to retaliate against him for filing the First Lawsuit and (b) to deter witnesses from participating in that lawsuit, in violation of 42 U.S.C. § 1985(2), and (2) they had negligently refused to prevent the conspiracy, in violation of 42 U.S.C. § 1986.

Defendants moved to dismiss Wainberg's complaint for failure to state a claim. They argued, among other things, that the statute of limitations barred Wainberg's claims. The district court granted that motion. Wainberg timely appealed.

## II.     DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2). In

other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the context of section 1985 conspiracy claims, "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985).

We review de novo the granting of a motion to dismiss for failure to state a claim. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022). For purposes of our review, we accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* But we need not accept legal conclusions, even when they are "couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"A statute of limitations bar is an affirmative defense," and a plaintiff is "not required to negate an affirmative defense in [its] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted), *abrogated on other grounds by Twombly*, 550 U.S. 544. So dismissal on statute-of-limitations grounds is proper only where it is "apparent from the face of the complaint that the claim is time-barred." *Id.* (citation and internal quotation marks omitted); *see also Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint.").

Here, the district court erred in determining that the statute of limitations barred Wainberg's conspiracy claims.

A. *The statute of limitations ran separately for each overt act in furtherance of the § 1985 conspiracy.*

Section 1985 "prohibits conspiracies to intimidate parties or witnesses to federal lawsuits." *Farese v. Scherer*, 342 F.3d 1223, 1229 (11th Cir. 2003). A civil conspiracy, in turn, requires "an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc) (quoting *Bivens Gardens Office Bldg., Inc. v. Barnett Banks Inc.*, 140 F.3d 898, 912 (11th Cir. 1998)).

Conspiracy claims under section 1985 share the forum state's statute of limitations for tort claims. *Rozar v. Mullis*, 85 F.3d 556, 560–61 (11th Cir. 1996). In Georgia's case, that's two years. *See id.* (citing GA. CODE ANN. § 9-3-33). But federal law determines when the cause of action for federal civil-rights claims accrues—in other words, when the statute of limitations begins to run. *Id.* at 561. As a general matter, that occurs when "facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* at 561–62 (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).

Here, the parties do not dispute the applicable statute of limitations but rather when the limitations period began to run. Wainberg contends that the statute of limitations ran separately for each overt act taken in furtherance of the conspiracy. Defendants

disagree. They assert instead that the statute of limitations began to run on May 1, 2019 (the date of Mellichamp's affidavit), when Wainberg should have been aware of the alleged conspiracy, so Wainberg's suit is untimely.[2]

Wainberg is correct. In *Mizell v. North Broward Hospital District*, 427 F.2d 468, 475 (5th Cir. 1970), the former Fifth Circuit rejected the argument that the statute of limitations for a section 1985 conspiracy begins to run at the time of the first overt act, and no other overt acts during the limitations period can form the basis for a claim.[3] The former Fifth Circuit then remanded the case to the district court "to reinstate the case for further proceedings in light of our decision that the conspiracy charge is still viable as to"

---

[2] Defendants also argue that Wainberg has forfeited his claim that the statute of limitations runs separately for each overt act. To be sure, Wainberg did not explicitly articulate his argument or cite his principal case, *Mizell v. N. Broward Hosp. Dist.*, 427 F.2d 468 (5th Cir. 1970), in the district court. But he argued that his claims "continued to accrue, evolve, and culminate" with the 2020 overt acts, so his suit is not time-barred. This does not amount to forfeiture. *See, e.g., Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992) ("Once a . . . claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments—let alone authorities. . . Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable.").

[3] All Fifth Circuit decisions issued before October 1, 1981, are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the overt acts during the limitations period. *Id.*; *see also DeLaughter v. Borden Co.*, 364 F.2d 624, 628 (5th Cir. 1966) (citing with approval a case that "viewed each act of the defendant as a separate cause of action" for statute of limitations purposes).

Though we apparently have not since revisited this issue, *Mizell* remains binding prior panel precedent.[4] *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Our later decision in *Rozar v. Mullis*, 85 F.3d 556 (11th Cir. 1996), did not retreat from *Mizell*. Nor is it in conflict with *Mizell*. In *Rozar*, the plaintiffs alleged a section 1985 conspiracy (among other claims) by both county and state defendants. *Id.* at 558. Specifically, the plaintiffs claimed that the siting (by the county defendants) and permitting (by the state defendants) of a landfill in their neighborhood was racially discriminatory in violation of the Fourteenth Amendment. *Id.* We dismissed the plaintiffs' section 1985 claim against the county defendants as time-barred. *Id.* at 563. In doing so, we identified the "operative decision amounting to the alleged constitutional injury"—in other words, the conspiratorial act underlying the section 1985 claim—as the County Board of Commissioners

---

[4] Defendants argue that *Mizell* is no longer binding. For support, they rely on Judge Tuttle's statement in a partial dissent that "*Mizell* is overruled sub silentio by failing to consider its application to the facts of the case." *Blair v. Page Aircraft Maint., Inc.*, 467 F.2d 815, 821 (5th Cir. 1972) (Tuttle, J., concurring in part and dissenting in part). But a dissenting opinion cannot overrule prior panel precedent. And even if it could, *Blair* concerned a distinct aspect of *Mizell*: whether state or federal law governs the tolling of a statute of limitations. *Id.*

vote selecting the landfill site. *Id.* So, we reasoned, the statute of limitations ran from the date of that vote. *Id.* And any later action that the county defendants undertook, like exercising the option to purchase the landfill property, was merely a continuation of that "operative decision" rather than a discrete conspiratorial act supporting liability. *See id; cf. Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("[t]he proper focus" of the statute-of-limitations inquiry "is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful" (alteration in original) (citation and internal quotation marks omitted)). Those actions, therefore, did not trigger a distinct limitations period. *See id.*

By contrast, we found that the plaintiffs' section 1985 claims against the state defendants were *not* time-barred. *Id.* at 564. Rather, the state defendants had not participated in the site-selection vote, so their liability could not attach until either the date they made a site-suitability determination or the date they issued the final permit. *Id.* The plaintiffs sued within the two-year limitations period following either of those actions, so their claims were timely. *Id.*

But even if we were to view *Rozar* as suggesting that the statute of limitations ran for only one of those allegedly conspiratorial acts rather than independently for each act, it is inconsistent with *Mizell*, and as our earlier precedent, *Mizell* controls. *See MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1250 (11th Cir. 2023) (under the "earliest case" rule, when prior panel precedents conflict, the

earlier case controls). But we read *Rozar*'s result as entirely consistent with *Mizell*, so *Rozar* does not alter *Mizell*'s clear application to this case.

Though we have apparently not cited *Mizell* since its issuance, we continue to believe it is legally sound. For instance, *Mizell*'s approach is consistent with several of our sister circuits.[5] *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001); *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980); *Dique v. N.J. State Police*, 603 F.3d 181, 189 (3d Cir. 2010); *Scherer v. Balkema*, 840 F.2d 437, 439–40 (7th Cir. 1988); *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986); *Lawrence v. Acree*, 665 F.2d 1319, 1324 (D.C. Cir. 1981).[6]

And, though in a different context, the Supreme Court has also held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). *Morgan* concerned the statutory period for filing Title VII discrimination and retaliation claims with the Equal Employment Opportunity Commission, *id.* at 105, but it is instructive here. In that case, the Supreme Court declined to allow a plaintiff to overcome the statutory time bar for claims that

---

[5] Some of these cases concern the statute of limitations for claims under section 1983 rather than section 1985. But because both statutes apply to civil conspiracies, and both borrow statutes of limitations from state law, *Rozar*, 85 F.3d at 561, their reasoning applies in both contexts.

[6] Indeed, *Lawrence* cites *Mizell* to support the proposition that "the statute of limitations in a civil damages action for conspiracy runs separately from each overt act that is alleged to cause damage to the plaintiff." 665 F.2d at 1324 & n.7.

were "sufficiently related" to timely claims. *Id.* But as relevant here, it treated each "independently discriminatory" act as starting a separate clock. *See id.* at 113. And as Justice O'Connor explained in her partial concurrence, this treatment is consistent with the Court's approach in other contexts. *See id.* at 127 (O'Connor, J., concurring in part and dissenting in part); *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189 (1997) (for ongoing antitrust violations, "each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory [limitations] period running again" (citation and internal quotation marks omitted)).

Given *Mizell*, as well as persuasive authority from the Supreme Court and our sister circuits, Wainberg's section 1985 claims based on overt acts that occurred on or after August 7, 2020 (two years before he filed his lawsuit), were timely.

That said, any claims based on acts before August 7, 2020, are time-barred. But while these time-barred acts may not themselves form the basis of Wainberg's claims, Wainberg may still use "the prior acts as background evidence in support of" his timely conspiracy claims. *See Morgan*, 536 U.S. at 113.

### B. *The continuing-violation doctrine does not apply to the untimely overt acts.*

We briefly address the district court's application of the continuing-violation doctrine to Wainberg's claims. We agree that the doctrine does not save the untimely overt acts.

Under the continuing-violation doctrine, a plaintiff may "sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Doe ex rel. Doe v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022) (quoting *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006)). For instance, "[i]f a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations." *Id.*

But we apply that doctrine only in limited circumstances. We "distinguish[] between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *Id.* (alteration in original) (quoting *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993)). The continuing-violation doctrine applies in only the second scenario. And the continuing-violation doctrine similarly does not apply when a plaintiff alleges "a series of repeated violations that result in repeated harms." *Id.* at 1306 (citing *Morgan*, 536 U.S. at 113). In those cases, "each new violation" starts the clock on its own limitations period. *Id.*

As we've explained, this case falls into the category of cases involving alleged repeated violations, each of which triggers its own statute of limitations. *See id.*; *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) ("the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a [section 1985] conspiracy"). So the district court

correctly concluded that the continuing-violation doctrine does not apply. But because the district court did not consider the discrete statutes of limitations for each overt act, we remand so that it may do so.

## III.   CONCLUSION

For the foregoing reasons, we vacate the district court's order granting Defendants' motion to dismiss and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**